[No. 34806.    Department One.    April 9, 1959.]

GEO. V. NOLTE & CO., *Respondent,* v. PIELER CONSTRUCTION Co., *Appellant,* GEO. V. NOLTE *et al., Respondents.*[1]

[1]Reported in 337 P. (2d) 710.

*Lycette, Diamond & Sylvester* and *Lyle L. Iverson,* for appellant.

*Sherwood & Forrest* and *Livesey, Kingsbury & Livesey,* for respondents.

OTT, J.—Myers, Major & Co., a copartnership (hereinafter referred to as Myers), was the successful bidder for the construction of a Federal housing administration project at the Naval Air Station on Whidbey island. April 24, 1952, Myers, the prime contractor, entered into a subcontract with Pieler Construction Co. (hereinafter referred to as Pieler) for the construction of certain streets, curbs, sidewalks, utilities, site improvements, and landscaping on the project, for a total of $246,500.

On or about May 19, 1952, Geo. V. Nolte and Fred M. Harris, doing business as Geo. V. Nolte & Co. (subsequently incorporated and hereinafter referred to as Nolte), entered into a written agreement with Pieler to construct, according to the plans and specifications, the curbing and sidewalks of the Pieler subcontract, for the flat sum of $40,152.25.

The prime contract provided that, if a disagreement should arise between the parties thereto, such dispute must first be submitted for arbitration as "a condition precedent to any right of legal action that either party may have against the other." This provision was carried, by reference, into the other contracts involved.

Nolte constructed the curbs and sidewalks in full compliance with the plans and specifications, nearly two years before the completion of the prime contract, and was paid $33,547.90 on account. The FHA inspector refused to accept the curbs and sidewalks because, in the interim, the sidewalks had become broken and cracked and the curbs had sunk below the elevation specified. The prime contractor, Myers, notified the subcontractor, Pieler, of the FHA rejection. Pieler requested Nolte to repair the damages and make the construction acceptable to the FHA inspector, or Pieler would do it and charge Nolte for it. Nolte insisted it had constructed the curbs and sidewalks according to the plans and specifications; that the sidewalks, through no fault of Nolte, had become broken because of the activity of trucks driving over the finished sidewalks without proper protection; and that the curbs had sunk because the engineers' plans had not required adequate ballast before construction. Nolte refused to do the work again unless the additional work and materials would be paid for. Pieler notified Nolte that it had elected to do the rehabilitation work and would recover from the persons responsible for the damage. The cost of the rehabilitation was $7,082.22.

Pieler requested arbitration with Myers for claims aggregating $34,223.60 as its subcontractor, and included its claim for rehabilitation expense of the sidewalks and curbs. At the arbitration hearing, Pieler called Mr. Nolte as its witness, who testified that his company had performed the contract with reference to the construction of the sidewalks and curbs in accordance with the plans and specifications. No evidence was presented refuting the Nolte testimony. The arbitrators denied $5,642.39 of Pieler's claim for these

items, for the reasons that there was some evidence of improper impaction along the line of the curbs, and they could not determine from the evidence what portion of the damage to the sidewalk was due to trucks driving over them as distinguished from other causes and what portion of the rehabilitation work was accomplished by Myers and what portion by Pieler. Pieler permitted the judgment of award to become final.

September 2, 1954, Pieler informed Nolte of the Myers-Pieler arbitrators' award and notified Nolte that it was withholding the amount disallowed from the balance due Nolte. October 15, 1954, Nolte commenced its first action (Island county cause No. 3364) to recover the balance due it from Pieler. Pieler's affirmative answer, filed January 4, 1955, alleged that its contract with Nolte provided for arbitration as a conditioin precedent to the maintenance of a civil action, and that Nolte had not requested arbitration. Pieler also cross-complained against Nolte for sums due it under the contract. Nolte's written offer to arbitrate during the pendency of this proceeding, dated February 24, 1955, was refused by Pieler March 7, 1955. May 26, 1955, Nolte's reply to Pieler's answer alleged its offer to arbitrate had been refused. December 2, 1955, Pieler moved for summary judgment, alleging that Nolte's failure to arbitrate prior to bringing the action barred it from the maintenance thereof. March 5, 1956, the court filed its memorandum opinion on the motion for summary judgment, in which it held, *inter alia,* that Pieler's cross-complaint did not constitute a waiver of the arbitration covenant because it had been pleaded affirmatively as a bar, and that Nolte's offer to arbitrate was not timely because it did not in fact precede the commencement of the action but was subsequent thereto. March 21, 1956, judgment was entered dismissing both causes of action without prejudice. There was no appeal.

Nolte renewed its written offer to arbitrate on March 22, 1956. It was refused by Pieler March 26, 1956.

June 20, 1956, Nolte commenced the instant action to

recover the balance due from Pieler. From a judgment entered in favor of Nolte, Pieler appeals.

Appellant's first contention on appeal is that Nolte's offer to arbitrate was not timely made and constituted a bar to any judgment for Nolte.

Article 40 of the "General Conditions" of the American Institute of Architects provided in part as follows: ". . . the demand for arbitration shall be made within a reasonable time after the dispute has arisen; . . ."

In *Vance v. Mutual Gold Corp.*, 6 Wn. (2d) 466, 478, 108 P. (2d) 799 (1940), we approved a definition of "reasonable time" as:

" 'Such length of time as may fairly, properly, and reasonably be allowed or required, having regard to the nature of the act or duty, or of the subject matter, and to the attending circumstances.' "

When contracting parties have agreed that a condition of the contract must be performed within a reasonable time, the party who asserts the time of performance to have been unreasonable has the burden to prove its unreasonableness.

A covenant in a contract providing for arbitration can be waived. *In re Arbitration Puget Sound Bridge & Dredging Co. v. Lake Washington Shipyards,* 1 Wn. (2d) 401, 410, 96 P. (2d) 257 (1939); 3 Am. Jur. 887, Arbitration and Award, § 56. A waiver of a condition can be accomplished, expressly or impliedly. *In re Arbitration Puget Sound Bridge & Dredging Co. v. Lake Washington Shipyards, supra.* If a waiver is accomplished by implication, it, likewise, is an issue to be determined by the court, based upon the facts and circumstances relied upon.

Of the time that elapsed between September 2, 1954 (the date a dispute arose between Pieler and Nolte), and March 22, 1956 (the date Nolte renewed its offer to arbitrate), all that is reasonably chargeable to Nolte alone is from September 2, 1954, to February 6, 1955 (the date of Nolte's first written offer to arbitrate). The remaining fourteen months' time lapse was attributable solely to

Pieler's filing of its cross-complaint, which raised a *bona fide* contention on the part of Nolte that a waiver was thereby implied.

■ Applying the above rules to these circumstances, Pieler failed to establish the elapsed time to be unreasonable; nor was there any evidence that the elapsed time chargeable to Nolte or to either of the parties caused Pieler any loss. We find no merit in appellant's first assignment of error.

Appellant next contends that the request for arbitration was not timely made for the reason that Art. 40, *supra,* provided in part: " . . . in no case, however, shall the demand [for arbitration] be made later than the time of final payment, . . . ". and that the final payment referred to was the final payment between Myers and Pieler.

■ The A. I. A. articles were a part of the Myers-Pieler contract; likewise, they were a part of the Pieler-Nolte contract. In interpreting the meaning of the A. I. A. articles as they apply to the Pieler-Nolte contract, the words "final payment" could refer only to the final payment between Pieler and Nolte. We find no merit in this contention.

Appellant next contends that Nolte was a party to the original arbitration proceeding between Myers and Pieler, and that, Nolte having taken no appeal from the judgment of award, its claim was barred by the application of the doctrine of *res judicata.*

■ With this contention we do not agree. Pieler requested arbitration with Myers. The subject matter for arbitration was the Myers-Pieler contract. The award of the arbitrators adjudicated only the rights of the parties to the Myers-Pieler contract. Nolte was not a party to the Myers-Pieler arbitration. The award of arbitration in the Myers-Pieler contract was not a bar to the instant proceeding because it lacked concurrence of at least two of the required elements. See *Symington v. Hudson,* 40 Wn. (2d) 331, 243 P. (2d) 484 (1952).

Finally, the court found that Nolte in every respect per-

formed the provisions of its contract with Pieler. The findings of the court are supported by the record.

We find no merit in appellant's remaining assignments of error.

The judgment is affirmed.

WEAVER, C. J., MALLERY, DONWORTH and HUNTER, JJ., concur.