# Richmond

## United States Fidelity & Guaranty Company v. Joseph Thomas Byrum, Et Al.

January 17, 1966.

Record No. 6071.

Present, All the Justices.

*Thomas L. Woodward* and *Clyde W. Cooper*, for the plaintiff in error.

*Marshall Andrews* and *Robert G. Winters* (*Pilcher, Underwood, Pilcher & Winters*, on brief), for the defendants in error.

Snead, J., delivered the opinion of the court.

In this action United States Fidelity & Guaranty Company, hereinafter called U.S.F.&G., sought to recover of Celina Mutual

Insurance Company, hereinafter referred to as Celina, and Joseph T. Byrum the sum of $27,500 which it had paid out under a general liability insurance policy issued to Perry Farm Equipment Company, Inc., hereinafter called Perry Company, insuring the negligent acts of its employees. Celina demurred to both the motion for judgment and the amended motion. The demurrers were sustained and the motions were dismissed as to Celina, but the case was continued as to Byrum. To this action of the court U.S.F.&G. has assigned error.

The alleged cause of action resulted from an automobile accident which occurred on March 31, 1961 in Nansemond county. Byrum was operating a car owned by his mother on business for his employer, Perry Company, which collided with a vehicle owned and operated by Mallie R. Jernigan. Riding with Jernigan were his wife and two sons, Robert and Tony. Robert was killed, and all of the other occupants of the car sustained personal injuries.

Robert's administrator instituted an action against Byrum and Perry Company and obtained a verdict and judgment against both defendants for $20,000, which was paid by U.S.F.&G. under its liability policy issued to Perry Company. Later, the combined claims of the injured occupants of the Jernigan vehicle were settled by U.S.F.&G. for $7,500, and "complete releases" were obtained.

It was stipulated that there was "no policy of insurance on the Byrum automobile at the time of the accident." The Jernigan vehicle was insured against public liability by a policy issued by Celina which contained the uninsured motorist endorsement required by Code, § 38.1-381(b). The policies issued by U.S.F.&G. and Celina were not filed as exhibits.

Under the foregoing facts, U.S.F.&G. claims here that it is entitled to recover from Celina $15,000[1] of the $20,000 which it paid on the death claim plus $7,500 paid by it on the personal injury claims, making a total of $22,500. In any event, U.S.F.&G. contends that it is entitled to recover "at least half of the amount of its expenditures." It appears that U.S.F.&G. bases its cause of action upon the theory of contribution or indemnification and that it relies upon the uninsured motorist endorsement contained in Celina's policy issued to Mallie R. Jernigan to sustain its contention that Celina also was liable for the death and injuries caused by the Byrum vehicle.

---

[1] Section 46.1-1(8), which is incorporated by reference into § 38.1-381, defines the term *"Financial responsibility"* and when read in conjunction with § 38.1-381 provides, *inter alia*, that the uninsured motorist endorsement shall be a minimum of $15,000 for bodily injury to or death of any one person.

The controlling question presented, therefore, is whether the automobile driven by Byrum was an uninsured motor vehicle at the time of the accident within the meaning of the uninsured motorist law so as to bring the endorsement into operation.

Code, § 38.1-381(c) provides in part:

" *** [T]he term 'uninsured motor vehicle' means a motor vehicle as to which there is no (i) bodily injury liability insurance and property damage liability insurance both in the amounts specified by § 46.1-1(8), as amended from time to time, or (ii) there is such insurance but the insurance company writing the same denies coverage thereunder, (iii) there is no bond or deposit of money or securities in lieu of such bodily injury and property damage liability insurance and (iv) the owner of such motor vehicle has not qualified as a self-insurer under the provisions of § 46.1-395. A motor vehicle shall be deemed to be uninsured if the owner or operator thereof be unknown; provided that recovery under the endorsement or provisions shall be subject to the conditions hereinafter set forth."

U.S.F.&G. argues that the term "uninsured motor vehicle" refers only to the vehicle itself; that Perry Company's liability policy was not upon the Byrum car; that the Byrum automobile was uninsured, and that the Jernigan vehicle was insured by a bodily injury liability policy issued by Celina which contained the uninsured motorist clause. Hence, U.S.F.&G. asserts, Celina is legally liable to it for $22,500 of the $27,500 which it paid to satisfy the judgment obtained against Byrum and Perry Company and to settle the personal injury claims resulting from the accident.

Celina, on the other hand, takes the position that there was no "uninsured motor vehicle" involved in this accident and that coverage under the uninsured motorist endorsement was therefore not available to anyone.

It is true that no policy of bodily injury liability insurance specifically covering the Byrum vehicle was in effect, but this fact standing alone does not necessarily lead to the conclusion that the vehicle was an "uninsured motor vehicle" within the meaning of the statute.

As has been said, at the time of the collision Byrum was operating his mother's vehicle within the scope of his employment with Perry Company, and under U.S.F.&G.'s policy Perry Company was insured against liability arising out of Byrum's negligent acts committed while operating the vehicle. When Robert Jernigan's administrator secured a verdict and judgment against Byrum and Perry

Company, they both became legally liable for the accident and were obligated to pay the judgment. As a consequence, U.S.F.&G., Perry Company's insurer, paid the judgment in full and settled the personal injury claims. The policy, in effect, extended to the vehicle operated by Byrum on this particular occasion, and it is readily apparent that, as a practical matter, the Byrum automobile at the time of the accident was a motor vehicle as to which there was liability insurance as required by § 46.1-1(8). We therefore hold that the Byrum car was an insured, rather than an uninsured motor vehicle within the meaning of the uninsured motorist law and that the uninsured motorist endorsement contained in Celina's liability policy did not become operative.

The record does not show that Jernigan, Celina's insured, was a joint tort feasor, and it is not contended that he was guilty of negligence which was a proximate cause of the accident. Under familiar principles, U.S.F.&G. is therefore not entitled to contribution from Celina.

If Celina had paid the Jernigans' claims under its uninsured motorist endorsement, it would have been subrogated to their rights against the negligent third parties to the extent of such payments pursuant to the terms of sub-section (f) of § 38.1-381. This sub-section is the only provision in the uninsured motorist law which permits subrogation. Hence, U.S.F.&G. is given no such right.

In *Horne* v. *Insurance Company*, 203 Va. 282, 285, 123 S.E.2d 401 we said:

" *** It is not the purpose of the uninsured motorist law to provide coverage for the uninsured vehicle, but its object is to afford the insured additional protection in event of an accident. ***" See also *Nationwide* v. *Harleysville Mutual*, 203 Va. 600, 603, 125 S.E.2d 840; *Drewry* v. *State Farm Mutual*, 204 Va. 231, 237, 129 S.E. 2d 681.

Under the facts and circumstances of this case, there is no provision in the uninsured motorist law, nor has any other legal authority been pointed out, which would allow U.S.F.&G. to recover from Celina on the grounds of contribution, indemnification, or any other theory any part of the sums paid by it as a result of the accident.

We hold that the trial court was correct in sustaining Celina's demurrers and in entering final judgment in its behalf. The order appealed from is therefore

*Affirmed.*