[No. 47-40325-1.  Division One.  December 1, 1969.]
Panel 2

OLYMPIAN STONE CO., INC., *Appellant,* v. MACDONALD CONSTRUCTION COMPANY *et al., Respondents.*

*Graham, Dunn, Johnston & Rosenquist, Charles S. Mullen* and *Jack G. Strother,* for appellant.

*Allen, DeGarmo & Leedy* and *Seth W. Morrison,* for respondent MacDonald Construction Company.

*Preston, Thorgrimson, Starin, Ellis & Holman* and *Charles E. Peery,* for respondent Municipality of Metropolitan Seattle.

UTTER, J.—Olympian Stone Co. appeals from an order and judgment which confirmed an arbiter's award and entered judgment thereon in favor of MacDonald Construction Co.

There are two questions raised by the assignments of error: (1) did MacDonald, as a matter of law, waive its right to proceed in arbitration by failing to timely pursue the right to arbitrate its claim, and (2) did the trial court commit reversible error by entering findings of fact and

conclusions of law relating to matters occurring in arbitration.

Where it is contended a factual question is established as a matter of law, the court must assume the truth of all the opposing evidence and the reasonable inferences arising therefrom. *Heasley v. Riblet Tramway Co.*, 68 Wn.2d 927, 416 P.2d 331 (1966).

The facts are not in substantial conflict. They reveal MacDonald, as general contractor, executed a contract with The Municipality of Metropolitan Seattle (Metro) for construction of a sewage treatment plant. MacDonald then contracted with Olympian to supply precast concrete panels for the plant.

MacDonald's contract with Metro provided any controversy arising out of the contract would be submitted to arbitration. MacDonald's subsequent contract with Olympian provided Olympian was bound the same as MacDonald "by the contractual requirements to Metropolitan Engineers." This specifically included by reference the arbitration provisions.

The MacDonald-Olympian contract also provided Olympian would correct all defects appearing within 1 year after final acceptance by Metro of the entire building and ". . . save harmless the contractor and owner from all expense for the replacement of such defective work . . ."

Metro formally accepted all work performed under the general contract on July 15, 1965, for purposes of the 1-year guarantee. Subsequently, Olympian and MacDonald were unable to agree about the form of a written guarantee MacDonald required as a condition of final payment and Olympian brought suit in January, 1966, for final payment due under the contract.

MacDonald notified Olympian on March 30, 1966, of rust spots appearing on the exterior of the concrete panels and of its obligation under the guarantee. The next day MacDonald filed its answer to Olympian's lawsuit alleging as a

defense only that Olympian had failed to execute a written guaranty.

Letters requesting repair of the rust spots were sent by Metro to MacDonald who then referred the letters to Olympian. Olympian replied on July 19, 1966, by letter to MacDonald denying any responsibility for the rust spots, stating they were a result of improper specifications, earthquake damage, improper mounting and exposure to noxious fumes.

This letter was forwarded to Metro by MacDonald who heard nothing from Metro until November 11, 1966. At that time Metro indicated it rejected the contentions of Olympian and notified MacDonald they had 30 days to initiate repairs.

MacDonald did not know Olympian's exculpatory letter of July 19, 1966, would not be accepted by Metro until Metro's rejection of the excuses. On November 11, 1966, Metro and MacDonald did not know whether Olympian would make repairs as demanded by Metro in its letter, in order to mitigate costs and claim reimbursement, or whether they would alternately refuse to do anything.

MacDonald moved to amend its answer on November 18, 1966, to assert a counterclaim against Olympian for defects of materials, and further asked for a stay of proceedings alleging the determination of its counterclaim "may be subject to arbitration." Inasmuch as the 30-day period to answer Metro's demand extended beyond the November 22 date, MacDonald could only urge the existence of a possible indemnity claim and the possibility of arbitration.

The action on the counterclaim was stayed. A trial, however, was held on November 22, 1966, and judgment entered on the limited issue of the amount of retention under the contract owing and the scope of the guaranty of Olympian. The trial court then imposed on MacDonald the obligation to bring Metro into the case.

A conference was held by the three parties on December 19, 1966, to determine if settlement was possible. The first indication from the record that settlement would not be

accomplished was Metro's formal demand on February 21, 1967, for the $44,000 as the cost of replacement of the defective panels and its formal counterclaim and demand for arbitration on that same day. This was the first time Metro claimed a specific dollar figure for damages.

MacDonald tendered the defense of Metro's claim to Olympian 2 days later. Olympian did not accept and on March 14, 1967, filed a motion for an order to direct Mac-Donald to join Metro as a party. The next day MacDonald filed a motion to stay proceedings and compel arbitration pursuant to RCW 7.04.030, .040 and served appropriate papers on Metro.

Following a hearing on March 29, 1967, the trial court orally granted MacDonald's motion to compel arbitration and joined Olympian to the arbitration. The court ruled that MacDonald had not waived or otherwise lost the right to compel Olympian to arbitrate. It also joined Metro to the superior court action, stayed the superior court proceeding and ordered all parties referred to arbitration.

A writ of certiorari was sought by Metro and Olympian which was refused by the Supreme Court. The court order embodying the oral ruling of the March 29, 1967, hearing was signed June 5, 1967. On June 14, 1967, MacDonald served a demand for arbitration of Metro's claim on Olympian. With this factual background in mind, we shall consider the two legal issues presented by this case.

■ A right which one may enforce or insist upon, he may also repudiate or relinquish. Although the relinquishment must be voluntary and intentional, it may be either express or implied. It may arise from an express declaration of an intention not to claim the right, or it may be the result of acts or conduct which are inconsistent with the continued assertion of the right in question. *In re Arbitration Puget Sound Bridge & Dredging Co. v. Lake Washington Shipyards*, 1 Wn.2d 401, 410, 96 P.2d 257 (1939). Olympian contends the record establishes this waiver as a matter of law. The record does not support this contention. MacDonald had a duty to act only at such time as Metro's

claim for defective materials had sufficiently accrued so the resulting indemnification claim by MacDonald against Olympian should have been asserted.

This did not occur until after Metro served its formal demand for arbitration of its $44,000 counterclaim on February 21, 1967. The formal demand for arbitration was served on Olympian 9 days after entry of the court's order compelling arbitration. Olympian was afforded the opportunity to participate in all arbitration procedures affecting it prior to service of the formal demand and no prejudice was shown by failure to serve the demand earlier.

Olympian contends certain provisions of the contract provided for service of the demand for arbitration not later than the time of request for final payment. This is incorrect. This clause applies only to affirmative claims for relief by the contractor against the owner.

MacDonald's actions as already chronicled indicate it acted with dispatch following Metro's formal demand for arbitration to assert its rights to compel Olympian to arbitrate.

The evidence would support a conclusion that Mac-Donald timely pursued its right to arbitration as a matter of law. It does not support a contrary proposition.

Olympian relies on cases holding waiver to be established where a party answers in a cause without asserting the right to arbitration. *Radiator Specialty Co. v. Cannon Mills, Inc.,* 97 F.2d 318 (4th Cir. 1938), is illustrative of these. The cases are not in point as they do not involve a third party indemnification claim arising under the circumstances presented in this case.

■ Olympian contends in its final assignment of error the court erred in entering certain findings of fact and conclusions of law relating to matters occurring in arbitration that were not before the trial court, and cites *Thorgaard Plumbing & Heating Co., v. County of King,* 71 Wn.2d 126, 426 P.2d 828 (1967). It was there held that findings of fact are superfluous in support of a judgment rendered pursuant to the arbitration statute. In that case

the entire controversy was determined in an arbitration proceeding.

This case differs as numerous matters were tried before the court without a jury until proceedings were stayed pending completion of the arbitration. Following the arbitration, these matters were then returned to court for whatever further proceedings were required. Findings and conclusions were not inappropriate even if some were superfluous. No prejudice is shown to have inured to Olympian by the action of the court.

The judgment of the trial court is affirmed.

JAMES, C. J., and STAFFORD, J., concur.