[No. 2422–3.   Division Three.   October 17, 1978.]

RALPH C. FINNEY, ET AL, *Respondents,* v. FARMERS
INSURANCE CO. OF WASHINGTON, ET AL, *Appel-
lants,* AETNA CASUALTY & SURETY CO.,
*Respondent.*

*Walter G. Meyer, Jr.* (of *Halverson, Applegate & McDonald*), for appellants.

*Fortier & Baker, G. William Baker, Gavin, Robinson, Kendrick, Redman & Mays,* and *William H. Mays,* for respondents.

GREEN, J.—Defendant, Mid–Century Insurance Co., a member of Farmers Insurance Group (herein called Farmers), issued separate policies of insurance covering two automobiles owned by plaintiffs Finney. Both policies contained uninsured motorist coverage of $15,000 for each injury and $30,000 for each accident. After plaintiffs' daughter, Robin, was killed in an automobile collision, the plaintiffs, individually, and Mr. Finney as representative of Robin's estate, brought this action to recover under the uninsured motorist provisions of these policies and sought additional damages for Farmers' alleged bad faith in failing to negotiate or settle their claim. Farmers denied liability and filed a third–party complaint joining Aetna Casualty & Surety Co. who allegedly insured the automobile in which Robin was a passenger. All parties moved for summary judgment.

The trial court (1) dismissed the third–party complaint against Aetna Casualty & Surety; (2) entered judgment for plaintiffs against Farmers in the amount of $30,837.95 plus interest; and (3) dismissed plaintiffs' claim for additional damages based upon the alleged bad faith of Farmers. Farmers and plaintiffs appeal.

Numerous issues are presented and in general concern (1) the existence of timely notice, (2) the existence of an uninsured motorist, (3) the effect on Farmers' liability of Finney's settlement with and covenant not to sue one of the tort–feasors, (4) the effect of clauses relating to "other insurance", subrogation, and offset on the amount of Farmers' liability for uninsured motorist coverage, (5) the binding effect on the instant litigation of findings, conclusions and judgment entered in favor of plaintiffs against the allegedly uninsured motorist, (6) Farmers' liability for funeral expenses in addition to its uninsured motorist coverage, (7) the validity of the trial court's award of prejudgment interest, and (8) Farmers' liability for attorney's fees. We affirm.

On August 11, 1973, Robin Finney, age 16, was a passenger in a 1963 Chevrolet Nova driven by Norman Cornelius,

Jr., which had been purchased by Randall Wood, age 17, who was also a passenger. This vehicle crossed the center line of a highway and collided head–on with another car resulting in the instantaneous death of Cornelius, Wood and Finney, together with fatal injuries to two persons and serious injuries to five others in the other car. After the insurance carrier for Cornelius and Wood denied the existence of coverage for the collision, plaintiffs, in August 1974, presented a claim to Farmers, their insurance carrier, for the maximum ($30,000) uninsured motorist coverage under their two policies. On August 8, Farmers rejected this claim in writing, while indicating it would investigate the accident under a reservation of rights. At the same time, it wrote plaintiffs' counsel a letter stating that Cornelius' carrier, State Farm Insurance, was not denying coverage, only liability. This letter then stated:

> It is my position that since State Farm is not denying coverage, their policy is primary. It is my understanding that State Farm has coverage for bodily injury, uninsured motorist and medical payments. Any claim that you may have must be made to State Farm.

> If you should bring suit against State Farm, you will not be prejudiced in the future if it should develop that there is no insurance coverage available to your client. I make this statement in the event you find it adviseable [sic] to make an uninsured motorist claim along with a medical payments claim. The point is that the question of the primary coverage of State Farm must be resolved before Mr. Finney's policy becomes available.

Thereafter, on August 29, 1974, plaintiffs filed a wrongful death action against the estates of Norman Cornelius and Randall Wood, the driver and alleged owner, respectively, of the vehicle in which Robin was a passenger. In their complaint, they contended that the collision resulted from the negligence and intoxication of Cornelius and that Wood was legally responsible for the negligence of Cornelius. On February 26, 1975, plaintiffs compromised their action against the Cornelius estate for $15,000 and executed a

covenant not to sue "reserving the right to further prosecute this action against the defendants Wood . . . and . . . others." The remainder of the action went to trial and resulted in a judgment in favor of Robin's estate against the Wood estate in the amount of $45,837.95. Aetna Casualty & Surety Co., which insured Wood's parents, denied coverage. As a result, the Finneys were unable to collect the judgment.

In July 1975, plaintiffs brought this action against Farmers to recover damages for $30,000 under the uninsured motorist provisions of the two policies, plus interest, damages of $837.95 for funeral expenses, attorney's fees, and punitive damages for failure to negotiate or settle the claim. Farmers unsuccessfully raised numerous defenses to the action in the trial court and now urges those defenses upon this court on appeal.

First, Farmers contends plaintiffs did not give notice "as soon as practicable"[1] of their uninsured motorist claim. For that reason alone, Farmers argues there is no uninsured motorist coverage available to plaintiffs and the complaint should have been dismissed. We find no error. Plaintiffs' affidavits reflect that Howard Lewis, a Farmers Insurance Group agent, telephoned Mrs. Finney within a week after the collision to express his regrets over Robin's death. Insurance was discussed and with regard to the claims he said, in effect, "not to worry—you have one year before you need to do anything." The plaintiffs later contacted an attorney, and about August 1974, nearly a year after the accident, their attorney informed them that probably neither the operator of the vehicle nor the owner, Randall Wood, had insurance. At that time, plaintiffs presented their claim to Farmers for uninsured motorist coverage. These facts are not controverted.

---

[1]The policy provides:

"In the event of . . . loss, written notice containing particulars shall be given by or for the insured to the Company or any of its authorized agents as soon as practicable."

■ The notice requirements for uninsured motorist coverage do not become operative until an insured reasonably believes he has an uninsured motorist claim. *Thomas v. Grange Ins. Ass'n,* 5 Wn. App. 820, 490 P.2d 1316 (1971); *see Signal Ins. Co. v. Walden,* 10 Wn. App. 350, 517 P.2d 611 (1973), *review denied,* 83 Wn.2d 1013 (1974). At that point, notice should be given. Here, Mr. Lewis, Farmers' agent, knew of the collision and death just after it happened, and, as soon as plaintiffs learned that in all probability neither the operator of the vehicle nor its owner was covered by insurance, they presented their claim for uninsured motorist benefits to Farmers. Ironically, as plaintiffs' brief points out, Farmers is asserting, even now, that the owner and the vehicle are covered by insurance, and therefore, there is no uninsured motorist coverage under plaintiffs' policy. Yet it simultaneously contends that the plaintiffs should have recognized earlier than they did that they had an uninsured motorist claim. We agree with the trial court that in these circumstances plaintiffs' actions constituted reasonable notice.

Second, Farmers argues that Wood is not an uninsured motorist, and therefore, no recovery is allowed under its policies. In support of this argument, Farmers makes three contentions: (1) Randall Wood was insured under his father's policy with Aetna Casualty & Surety Co., and the third–party complaint against Aetna should not have been dismissed; or, alternatively, (2) Wood was insured under the policy carried by Cornelius with State Farm Insurance Co.; or (3) since Cornelius, the driver of the vehicle in which Wood was riding was insured, the vehicle was not uninsured within the meaning of the policy. We disagree with these contentions.

■ The record shows that on August 6, 1973, Wood, age 17, without the consent or knowledge of his father, paid one Monty Bak $450 to purchase the car. Mr. Bak thereupon signed the certificate of title and delivered it to Wood along with possession of the car. However, Wood had not registered the transfer of title before the accident occurred

on August 11. RCW 46.12.250 makes it "unlawful for any person under the age of 18 to be the registered or legal owner of any motor vehicle" if that person is not emancipated or on duty with the Armed Forces. Farmers applies this statute to the facts and asserts that Wood was not the owner of the Nova at the time of the collision, the true owner being Monty Bak. Consequently, Farmers contends the Nova was a "non–owned" vehicle within the terms of Aetna's policy which defines a "non–owned automobile" as an

> automobile or trailer not owned or furnished for the regular use of either the named insured or any relative . . .

We disagree. The contracts of a minor are not void, but voidable, and unless disaffirmed within a reasonable time after attaining majority, are valid. RCW 26.28.030. Here, the purchase had not been disaffirmed. On the precise facts involved in this case, the California Court of Appeals held the minor to be the equitable owner of the car he purchased and thus an owner within the meaning of an insurance policy. *Allstate Ins. Co. v. Chinn,* 271 Cal. App. 2d 274, 76 Cal. Rptr. 264, 266 (1969); *accord, St. Paul Fire & Marine Ins. Co. v. Muniz,* 19 Ariz. App. 5, 504 P.2d 546 (1972); *Harris v. Ward,* 224 So. 2d 517 (La. App. 1969). Our decision in *Wise v. Truck Ins. Exch.,* 11 Wn. App. 405, 523 P.2d 431 (1974), although involving a different issue, leads us to the same conclusion. A violation of RCW 46.12.250 is a misdemeanor. RCW 46.12.270. It operates upon and punishes those who violate its provisions. It should not be applied so as to affect the rights of third parties. *Beatty v. Western Pac. Ins. Co.,* 74 Wn.2d 530, 445 P.2d 325 (1968); *Junkin v. Anderson,* 12 Wn.2d 58, 74, 120 P.2d 548, 123 P.2d 759 (1941).

> [T]o do so would convert the privilege of infancy from a shield to a sword to be used to the injury of others.

*Wise v. Truck Ins. Exch., supra* at 409; *Lubin v. Cowell,* 25 Wn.2d 171, 185, 170 P.2d 301 (1946). For the foregoing reasons, the 1963 Nova was not a nonowned automobile within

the meaning of Aetna's policy. Even if it were "nonowned," it would not be within the coverage of Aetna's policy because when Randall Wood bought the car, it was then "furnished for the use" of Wood. *E.g., Gaddy v. State Farm Mut. Auto. Ins. Co.,* 32 N.C. App. 714, 233 S.E.2d 613 (1977); *Devine v. Aetna Cas. & Sur. Co.,* 19 N.C. App. 198, 198 S.E.2d 471 (1973), *review denied,* 284 N.C. 253, 200 S.E.2d 653 (1973). Thus, Farmers' initial contention must be rejected.

Further, Farmers claims that if the Nova was not a "nonowned" vehicle, then it must be an "owned" automobile. The Aetna policy defines an "owned automobile" as follows:

(a) a private passenger, farm or utility *automobile described in this policy* for which a specific premium charge indicates that coverage is afforded.

. . .

(c) a private passenger, farm or utility *automobile* ownership of which is *acquired by the named insured* during the policy period, provided
(1) it replaces an owned automobile as defined in (a) above, or
(2) the Company insures all private passenger, farm and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the Company during the policy period within 30 days after the date of such acquisition of his election to make this and no other policy issued by the Company applicable to such automobile, or

(d) a temporary substitute automobile . . .

(Italics ours.) The Nova does not fall within any of these provisions because (1) it was not described in the policy nor was a premium paid on it, (2) Randall Wood was not the named insured, and (3) it was not a temporary substitute vehicle. Thus, we find no merit to Farmers' claim.

The contention that Wood was insured under the State

Farm policy[2] carried by Cornelius also fails because it is premised upon the fact that Randall Wood did not own the 1963 Nova. As indicated above, Randall Wood was the owner because RCW 46.12.250 does not operate to the detriment of third parties.

Farmers' last contention is that if either the *owner* or operator of a vehicle has liability coverage, the vehicle would be insured and therefore would not be an "uninsured motor vehicle." Since the operator, Cornelius, was insured, Farmers argues that the vehicle was insured, and, therefore, their uninsured motorist coverage does not apply. We disagree.

RCW 48.22.030 provides:

no new policy or renewal . . . shall be . . . issued . . . unless coverage is provided therein . . . for the protection of persons . . . who are legally entitled to recover damages from owners *or* operators of uninsured motor vehicles . . .

(Italics ours.) Farmers' policy states:

[T]o pay all sums which the *owner* or operator of an uninsured motor vehicle would be legally responsible to pay as damages to the insured because of bodily injury sustained by the insured, caused by accident, and arising out of the ownership, maintenance *or* use of such uninsured motor vehicle; . . .

Uninsured motor vehicle means (1) a . . . vehicle . . . with respect to the ownership, maintenance *or* use of which there is . . . no bodily injury insurance . . .

(Italics ours.) The use of the disjunctive "or" in both the statute and in the policy is ambiguous because it renders the provisions subject to more than one interpretation. The interpretation urged by Farmers would mean that if an owner/passenger who was also liable was uninsured, but the

---

[2]The State Farm policy provides coverage for the use of a nonowned automobile by the named insured, his relatives or residents of his household, or "any other person . . . *not owning such automobile,* but only with respect to his liability for the use of such automobile by the insured" or by a relative of the insured or by a resident of the insured's household. (Italics ours.)

driver had insurance, the injured party's uninsured motorist coverage would not apply even though the driver's insurance was insufficient to cover the damages. This approach focuses on the vehicle, rather than on the 'tort-feasors. Plaintiffs assert that Farmers' interpretation reaches the very result the legislature intended to avoid in enacting the uninsured motorist statute. They contend that a vehicle is uninsured if there is no insurance as to either its ownership, *or* its maintenance, *or* its use. Consequently, since *Wood,* the owner, was liable and uninsured, Farmers' uninsured motorist coverage should apply. In *Touchette v. Northwestern Mut. Ins. Co.,* 80 Wn.2d 327, 494 P.2d 479 (1972), the court held that RCW 48.22.030 should receive a liberal construction in order to carry out the legislative intent and purpose. We are of the view the legislature intended the interpretation urged upon us by plaintiffs.[3] The legislative intent was to allow the insured to recover damages which the insured would have recovered had the liable party or parties been covered by insurance so long as there is no double recovery. As the court said in *Cammel v. State Farm Mut. Auto. Ins. Co.,* 86 Wn.2d 264, 270, 543 P.2d 634 (1975):

> "Uninsured motorist coverage is designed to protect not vehicles, but persons, *i.e.,* the innocent victims of negligent uninsured motorists." *Lipscombe v. Security Ins. Co.,* 213 Va. 81, 189 S.E.2d 320, 322–23 (1972).

Our holding is supported by *Allstate Ins. Co. v. Chastain,* 251 So. 2d 354, 356 (Fla. Dist. Ct. App. 1971), which construed an uninsured motorist insurance clause almost identical to the one at issue here to mean that if

---

[3]Farmers contends that the recent case of *Strunk v. State Farm Mut. Auto. Ins. Co.,* 90 Wn.2d 210, 580 P.2d 622 (1978), supports their position. *See also Ko v. Royal Globe Ins. Co.,* 20 Wn. App. 735, 583 P.2d 635 (1978), which relies on *Strunk.* We do not find *Strunk* applicable. *Strunk* involved a negligent *insured* motorist who was both the owner and operator of the vehicle. The court rejected the argument that because his insurance was inadequate to satisfy all claims he should be found to be an uninsured motorist as to remaining claims. This holding does not dispose of the problem presented here, namely, an *insured operator* and an *uninsured owner,* both of whom are legally responsible to plaintiffs.

there is any person legally responsible for the use of the vehicle (*e.g.*, the owner) who is not insured, then the vehicle is uninsured. Under Washington law, where the ownership of an automobile is admitted, there arises a presumption that, at the time of the accident, the vehicle was in the possession of the owner, and that the driver was operating it as the agent or servant of the owner. *Callen v. Coca Cola Bottling, Inc.*, 50 Wn.2d 180, 182, 310 P.2d 236 (1957); *Moffitt v. Krueger*, 11 Wn.2d 658, 662, 120 P.2d 512 (1941). If the presumption is unrebutted, the owner is vicariously liable for injuries resulting from the driver's negligence. Here, Wood, the owner of the vehicle, was present at the time of the accident, and Farmers offers no evidence to rebut the presumption that Cornelius was operating the car as Wood's agent. It is the fact that Wood, a legally responsible party, was uninsured because his father's policy with Aetna did not cover the Nova, that brings into play the uninsured motorist provision of the plaintiffs' policies.[4]

Third, Farmers contends that plaintiffs' settlement with the Cornelius estate operated to release the Wood estate

---

[4]The cases relied upon by Farmers are factually distinguishable. In *United States Fidelity & Guar. Co. v. Byrum*, 206 Va. 815, 146 S.E.2d 246 (1966); *Hayston v. Allstate Ins. Co.*, 290 So. 2d 67 (Fla. Dist. Ct. App. 1974); and *State Farm Mut. Auto. Ins. Co. v. Johnson*, 458 S.W.2d 473 (Tex. 1970), the driver of the vehicle was uninsured, but the owner's insurance covered both the owner and persons driving the vehicle. Therefore, both the owner and the operator were considered insured under the same policy. In the instant case, the owner was not insured and was not covered by the operator's policy. In *Macaluso v. Watson*, 188 So. 2d 178 (La. App. 1966) and *Employees Nat'l Ins. Co. v. Holliman*, 287 Ala. 123, 248 So. 2d 717 (1971), the operator was insured, but the owner was not. In those cases, the owner was not present in the vehicle at the time of the accident and had no actual or constructive knowledge that the borrower was incompetent or under some disability. Since those jurisdictions apparently do not recognize a presumption that the operator acts as agent of the owner, the owner could not be vicariously liable.

The case of *Gordon v. Phoenix Ins. Co.*, 242 So. 2d 485 (Fla. Dist. Ct. App. 1970), also relied upon by Farmers, was distinguished by the Florida court in *Allstate Ins. Co. v. Chastain, supra* at 356, on the basis that a satisfaction was given to the operator in the *Gordon* case which would enure to the benefit of the owner, who would only be vicariously liable, and on the basis that the *Gordon* opinion relied on *United States Fidelity & Guar. Co. v. Byrum, supra*, which arose in a

because Wood's negligence is imputed from Cornelius and is therefore only derivative. It reasons that since a passive (derivative) tort–feasor is entitled to indemnity from an active tort–feasor, the Wood estate could recover from the Cornelius estate any amount that plaintiffs collected from it and, thus, nullify the covenant not to sue. Farmers argues that the parties to the covenant could not have intended this result; rather, their intent was that the Cornelius estate be released from further liability to plaintiffs. Consequently, Farmers contends that it should not be liable under its own uninsured motorist coverage because its subrogation rights against Wood were in effect terminated by the release.

The covenant not to sue expressly reserved to plaintiffs "the right to further prosecute . . . [the] action against the defendants Wood . . . or others." Our State has recognized this type of reservation and enforced it so long as a plaintiff does not reap a double recovery. *See Christianson v. Fayette R. Plumb, Inc.*, 7 Wn. App. 309, 499 P.2d 72 (1972), which adopted Restatement of Torts § 885 (1939). It is apparent that no double recovery is involved in the instant case. Because of the number of injured parties claiming against the limited amount available under the Cornelius insurance policy, the plaintiffs settled with the Cornelius estate for $15,000. The covenant not to sue recites that the $15,000 is insufficient to cover plaintiffs' loss. The judgment entered against the Wood estate for $45,837.95 supports that assertion. Therefore, Farmers' contention is not supported by Washington law.[5]

Fourth, Farmers contends that the "other insurance"

state where an automobile is not considered a dangerous instrument and, therefore, there was no vicarious liability on the owner for the acts of the operator.

[5] In support of its argument that the covenant not to sue operated to release a derivatively liable party, Farmers cites a number of cases. These cases are distinguishable. *Holcomb v. Flavin*, 34 Ill. 2d 558, 216 N.E.2d 811 (1966) (document contained no reservation of rights); *Hillyer v. East Cleveland*, 155 Ohio St. 552, 99

provisions[6] of its policy preclude plaintiffs' recovery or, in the alternative, the subrogation clause[7] or the offset

N.E.2d 772 (1951) (document contained a reservation of rights, but the case was later distinguished in *Diamond v. Davis Bakery, Inc.*, 8 Ohio St. 2d 38, 222 N.E.2d 430 (1966), as involving a situation where the plaintiff had received full compensation from the first party); *Gibson v. Dupin*, 377 S.W.2d 585 (Ky. App. 1964) (document contained no reservation of rights); *Karcher v. Burbank*, 303 Mass. 303, 21 N.E.2d 542 (1939) (document contained no reservation of rights and the court expressly stated that where such a reservation of rights was present, it would be effective). *See also* Annot., *Release of (Or Covenant Not to Sue) Master or Principal as Affecting Liability of Servant or Agent for Tort, or Vice Versa*, 92 A.L.R.2d 533 (1963).

Plaintiffs cite several cases from other jurisdictions which uphold, as we do, a reservation of rights against one secondarily liable. *See Plath v. Justus*, 28 N.Y.2d 16, 319 N.Y.S.2d 433, 268 N.E.2d 117 (1971); *Gomez v. City Transp. Co.*, 262 S.W.2d 417 (Tex. Civ. App. 1953); and *Louisville Times Co. v. Lancaster*, 133 S.W. 1155 (Ky. App. 1911).

[6]The "other insurance" provisions are contained in the general conditions of the policy, as follows:

"8. OTHER INSURANCE IN THE COMPANY

"With respect to any occurrence, accident or loss to which this and any other insurance policy or policies issued to the insured by the Company also apply, no payment shall be made hereunder which, when added to any amount paid or payable under such other insurance policy or policies, would result in a total payment to the insured or any other person in excess of the highest applicable limit of liability under any one such policy.

"...

"13. Coverage C

"With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under the Uninsured Motorists Coverage shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the Company shall not be liable for a greater proportion of any loss to which this Uninsured Motorists Coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."

[7] "9. SUBROGATION

"In event of any payment, except under Coverages D and E, the Company shall be subrogated to all the insured's rights of recovery therefor against any

provision[8] of the policy should be applied to reduce the recovery by the amount received in the settlement with the Cornelius estate, *i.e.*, $15,000. We disagree. The "other insurance" provisions (1) limit recovery against Farmers to the highest limit of liability under only one of the two policies issued by Farmers, *i.e*, $15,000; (2) limit coverage to the extent that Farmers' coverage exceeds the amount of coverage available under any other "similar" insurance; and (3) if the insured has other "similar" insurance, Farmers' obligation to pay is limited to its pro–rata share of the loss. The attempt to limit plaintiffs' recovery to one Farmers policy, as indicated in item (1) is invalid under *Federated Am. Ins. Co. v. Raynes*, 88 Wn.2d 439, 447, 563 P.2d 815 (1977), in which the court stated:

> Respondent paid two premiums for uninsured motorist coverage and is entitled to the full protection which he has purchased.

Here, plaintiffs paid two premiums and are entitled to protection under both policies. *American States Ins. Co. v. Milton*, 89 Wn.2d 501, 573 P.2d 367 (1978). To give effect to items (2) and (3) above where a double recovery is not involved violates the principles announced in *Cammel v. State Farm Mut. Auto. Ins. Co., supra. See also Grange Ins. Ass'n v. Great Am. Ins. Co.*, 89 Wn.2d 710, 714 n.1, 575 P.2d 235 (1978);[9] *Maurer v. Grange Ins. Ass'n, Inc.*, 18 Wn. App. 197, 567 P.2d 253 (1977).

---

person or organization . . .

"If payment is made under Coverages D or E [the Medical Expense Coverage], the Company shall be subrogated . . . to the proceeds of any settlement . . . that may result from the exercise of any rights of recovery which the injured person . . . may have against any person or organization . . ."

[8]The offset provision provides:

". . .

"(b) Any amount payable under the terms of Part II . . . shall be reduced by

"(1) all sums paid on account of such bodily injury by or on behalf of (i) the owner or operator of the uninsured motor vehicle . . ."

[9]In footnote 1, Justice Horowitz wrote:

"The validity of condition No. 10, commonly known as an 'excess–escape' clause, is open to question, although we need not decide that matter here. Our

■ Neither do we find that the recovery should be reduced by the amount of plaintiffs' settlement with the Cornelius estate under the theory of subrogation. RCW 48.22.040(3), dealing with uninsured motorist coverage, provides:

> In the event of payment to an insured . . . the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement . . . resulting from the exercise of any rights of recovery of such insured *against any person. . . legally responsible* for the bodily injury for which such payment is made . . .

(Italics ours.) It has been held that a "person . . . legally responsible" refers only to the uninsured motorist, and not to any other persons involved in the collision. *Hawaiian Ins. & Guar. Co. v. Mead,* 14 Wn. App. 43, 50, 538 P.2d 865 (1975). Since Cornelius was not an uninsured motorist, Farmers is not entitled to reduce the amount payable under its uninsured motorist coverage by the amount plaintiffs received from the Cornelius estate on a subrogation theory. Nor is Farmers entitled to a reduction based on a setoff theory. Such a clause operates to reduce the mandatory coverage required by RCW 48.22.030, *i.e.,* $15,000/$30,000. The purpose of uninsured motorist coverage is to afford the insured plaintiff protection against the tortious motorist who is not financially responsible. Such a motorist cannot set off amounts received by a plaintiff from other parties from the amount of his liability. Nor should the injured party's insurer be accorded the right of setoff. *Brummett v. Grange Ins. Ass'n,* 4 Wn. App. 979, 984, 485 P.2d 88 (1971); *Solesski v. Oregon Auto. Ins. Co.,* 11 Wn. App. 850, 526 P.2d 68 (1974). To allow subrogation or setoff for the amount of plaintiffs' recovery from an insured tort-feasor

---

opinion in *Cammel v. State Farm Mut. Auto. Ins. Co.,* 86 Wn.2d 264, 543 P.2d 634 (1975), casts doubt on the validity of any 'other insurance' exclusion in an uninsured motorist coverage endorsement under RCW 48.22.030. Furthermore, at least one commentator has concluded that the weight of authority today is against the validity of the 'excess–escape' clause. A. Widiss, *A Guide to Uninsured Motorist Coverage* § 2.59 (1969, Supp. 1976)."

where double recovery is not involved would reduce the mandatory coverage required by the uninsured motorist statute and would be invalid. *Hawaiian Ins. & Guar. Co. v. Mead, supra* at 48–49; *see also Taylor v. Great Central Ins. Co.,* 305 Minn. 446, 234 N.W.2d 590 (1975); *American Mut. Ins. Co. v. Romero,* 428 F.2d 870 (10th Cir. 1970).

Fifth, Farmers contends it is not bound by the findings and judgment of $45,837.95 entered in plaintiffs' action against the Wood estate because (1) it was not a party to that action and collateral estoppel does not apply; and (2) provisions of its policy preclude such a judgment from having binding effect upon it. Farmers argues that the trial court erred in reasoning to the contrary. We find no error.

In August 1974, plaintiffs presented their claim of $30,000 to Farmers under the uninsured motorist provisions of its policies, stating that Cornelius and Wood had denied they were covered by insurance. On August 8, Farmers denied the claim, but indicated it would investigate under a reservation of rights. It also indicated that it had learned that State Farm Insurance covered Cornelius and, therefore, plaintiffs' claim should be presented forthwith to State Farm. Farmers also said:

> If you should bring suit against State Farm, you will not be prejudiced in the future if it should develop that there is no insurance coverage available.

Thereafter, plaintiffs sued both the Cornelius and Wood estates and sent copies of the summons and complaint to Farmers. On January 31, 1975, plaintiffs sent copies of an amended complaint, the answers of the Cornelius and Wood estates to that complaint, a police report, death certificate, coroner's report, and a trooper's affidavit to Farmers. At that time, plaintiffs advised Farmers that Cornelius carried liability insurance under two policies totaling $100,000. Farmers was informed that the claims arising out of the collision were substantial as five persons were seriously injured and two persons were killed in the other car in addition to the three killed in the vehicle driven by Cornelius. As a consequence, an allocation of the insurance was

proposed whereby plaintiffs would receive a $15,000 settlement. Plaintiffs also informed Farmers of their intent to proceed with the action against the Wood estate "whom we seek to hold liable as owner and passenger in an uninsured vehicle under the definition of your policy." Plaintiffs sought Farmers' consent to these procedures and persisted in their claim of uninsured motorist coverage under Farmers' two policies. Farmers responded by letter of February 7, simply asserting again that there was no coverage under Farmers' two policies. Even though Farmers was notified that trial would occur on the plaintiffs' claim against the Wood estate on June 23, 1975, it did not intervene in that action.

■ Farmers concedes that it had a right to intervene in plaintiffs' action against the Wood estate, but argues that its failure to intervene does not render it bound by the findings, conclusions and judgment. In *East v. Fields,* 42 Wn.2d 924, 925–26, 259 P.2d 639 (1953), involving a liability policy, the court held that where an insurer has notice of an action and is afforded the opportunity to participate in it, the insurance company is bound by the judgment against its insured on the question of liability regardless of whether it participates. Further, the insurance company is bound by any material finding of fact essential to the judgment of liability which is also decisive of the question of coverage under an insurance policy. Decisions of other states involving uninsured motorist coverage hold that the insurer is bound by a judgment, including a default judgment, when it had the opportunity to intervene. *State Farm Mut. Auto. Ins. Co. v. Christensen,* 88 Nev. 160, 494 P.2d 552 (1972) (default judgment); *Dominici v. State Farm Mut. Auto. Ins. Co.,* 143 Mont. 406, 390 P.2d 806 (1964) (default judgment); *Wells v. Hartford Accident & Indem. Co.,* 459 S.W.2d 253 (Mo. 1970); *State ex rel. State Farm Mut. Auto. Ins. Co. v. Craig,* 364 S.W.2d 343 (Mo. App. 1963); *Heisner v. Jones,* 184 Neb. 602, 169 N.W.2d 606 (1969); *Terzian v. California Cas. Indem. Exch.,* 42 Cal. App. 3d 942, 117 Cal. Rptr. 284 (1974). Here, Farmers

was fully apprised of plaintiffs' efforts to obtain recompense for Robin's tragic death after Farmers had denied uninsured motorist coverage. Farmers knew that plaintiffs were seeking to establish that Wood was the owner of the 1963 Nova and that he was liable for damages resulting from the collision. Farmers had to know that this determination might be crucial to their liability under the uninsured motorist provisions of their policies. In these circumstances, and based on the foregoing authorities, we hold that Farmers is bound by the findings, conclusions and judgment entered in the judgment against the Wood estate.

Further, Farmers claims that the judgment against the Wood estate was a stipulated judgment and, therefore, it is not bound by the judgment. It relies upon *Yakima Cement Prods. Co. v. Great Am. Ins. Co.,* 14 Wn. App. 557, 544 P.2d 763 (1975), *review denied,* 86 Wn.2d 1011 (1976). Such reliance is misplaced. In that case, in a federal court action to which the insurance company was not a party, Yakima Cement Products Co. and Jones Co. reached a dollar settlement between themselves and thereafter prepared findings of fact and conclusions of law which were entered in the United States District Court. Subsequently, in an action by Yakima Cement Products against Great American Insurance, it sought to use those findings to establish coverage. We held that this could not be done because the findings of fact relating to coverage were not essential to the judgment. The parties had compromised and settled their dispute. Entry of findings in that circumstance was not required, much less findings on the issue of insurance coverage. For that reason, we said the insured and a stranger to the policy could not stipulate to the facts relating to coverage and thereby bind an insurer who was not a party and had rightfully denied coverage in the first instance based upon the allegations contained in the complaint and counterclaim. We do not have that factual situation in the present case. To the contrary, the findings entered here were essential to the judgment establishing Wood's liability. Such liability was disputed by the parties

to the prior litigation and was submitted to the judge for his determination. No compromise or settlement was ever effected as to the liability issue. While certain admitted facts were contained in a pre–trial order, the findings, conclusions and judgment were only approved as to form. In any event, Farmers does not dispute the admitted facts. In these circumstances, *Yakima Cement Products* is not applicable.

Moreover, Farmers' contention that it is not bound by the judgment because the insurance policy so provides[10] must be rejected. Such provisions have been held waived where the insurer has notice and an opportunity to participate in the action. *See Allstate Ins. Co. v. Pietrosh,* 85 Nev. 310, 454 P.2d 106, 111 (1969); *State Farm Mut. Auto. Ins. Co. v. Christensen, supra; Hale v. State Farm Mut. Ins. Co.,* 255 Tenn. 620, 474 S.W.2d 905 (1971). Our court has stated that similar provisions are waived or forfeited when the insurer incorrectly denies coverage. *Vandivort Constr. Co. v. Seattle Tennis Club,* 11 Wn. App. 303, 522 P.2d 198 (1974); *Bosko v. Pitts & Still, Inc.,* 75 Wn.2d 856, 454 P.2d 229 (1969); *L.J. Dowell, Inc. v. United Pac. Cas. Ins. Co.,* 191 Wash. 666, 72 P.2d 296 (1937).

Likewise, Farmers' contention that plaintiffs' claim against Wood and the issue of Farmers' coverage must be submitted for arbitration[11] is rejected. At the time Farmers refused to honor plaintiffs' uninsured motorist claim on

---

[10]The policy provides:

"(4) [N]o judgment obtained in any action filed by the insured against the owner or operator of an uninsured motor vehicle shall be binding or determinative as to whether the insured is legally entitled to recover damages or the amount thereof under this coverage, nor shall the same be a bar to, or introduced in evidence in, any subsequent proceeding brought for the purpose of making such determinations."

[11]Paragraph 4 of the special provisions under Coverage C, Uninsured Motorists, provides:

"If any insured making claim hereunder and the Company do not agree that such insured is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle because of bodily injury to the insured, or do not agree as to the amount payable hereunder, then *either party,* on written demand

August 8, 1974, it knew an issue existed as to coverage and, in fact, encouraged plaintiffs to pursue their claim against the Cornelius and Wood estates. Plaintiffs did so. Thereafter, Farmers was continually informed of the more specific issues raised in those actions and of plaintiffs' continuous position that these claims were covered by Farmers' policies. Yet, Farmers did not demand arbitration. It was not until this proceeding against Farmers to collect under the uninsured motorist coverage that Farmers raised the question of arbitration. We agree with the trial court that this response comes too late. It is well established that an arbitration clause can be waived. *Pedersen v. Klinkert,* 56 Wn.2d 313, 352 P.2d 1025 (1960); *Geo. V. Nolte & Co. v. Pieler Constr. Co.,* 54 Wn.2d 30, 337 P.2d 710 (1959); *McNeff v. Capistran,* 120 Wash. 498, 208 P. 41 (1922); *Olympian Stone Co. v. MacDonald Constr. Co.,* 1 Wn. App. 410, 461 P.2d 589 (1969); *see also* Annot., *Uninsured Motorist Endorsement: Validity and Enforceability of Provisions for Binding Arbitration and Waiver Thereof,* 24 A.L.R.3d 1325, 1338, § 6(a) (1969).

Sixth, Farmers contends the court erred in requiring it to pay Robin's funeral expenses which are included under the medical expense coverage of the policy. Instead, Farmers argues that the amount should be deducted from the uninsured motorist coverage to avoid a double recovery. If there were a double recovery, Farmers' position would have merit. However, here, the total recovery for general damages is $45,000. The findings of fact and judgment against the Wood estate allocated $837.95, apart from the general

---

of the other, shall institute arbitration proceedings by serving upon the other a formal demand for arbitration.

". . . the arbitrator shall hear and determine the following issues:

". . .

"(a) The liability of the uninsured motorist to the insured,

". . .

"(3) The amount of the award within the terms and limits of the policy or policies applicable to the proceedings." (Italics ours.)

damages, for funeral expenses. Funeral expenses are covered under a separate provision of the policy unrelated to the uninsured motorist provision. The policy reflects that an additional premium was paid for this coverage. The funeral expenses were within the limit of that coverage, and therefore, the trial court correctly entered judgment for them. We find no error.

Seventh, Farmers contends the court erred in allowing prejudgment interest. Farmers' theory is that the amount of plaintiffs' damages was unliquidated. However, this theory is premised upon the contention that the judgment against the Wood estate is not binding upon Farmers. We have determined to the contrary. Consequently, the court properly allowed interest on the amount of uninsured motorist coverage under Farmers' policy from June 23, 1975, the date that judgment was taken against the uninsured motorist, Wood. On that date, plaintiffs' claim became a liquidated amount on which interest could accrue. *Vermette v. Andersen,* 16 Wn. App. 466, 472, 558 P.2d 258 (1976).

Finally, we come to plaintiffs' cross appeal. Plaintiffs contend the trial court erred in refusing to award them reasonable attorney's fees. They assert that Farmers acted in bad faith in refusing to negotiate their claim under the uninsured motorist provisions of the policy. After considering the myriad of issues raised in this appeal and the very thorough treatment of those issues contained in the briefs of all parties, and after considering the record before us, we are unable to conclude that the court erred in refusing to find bad faith on Farmers' part in failing to negotiate the uninsured motorist claim.

Affirmed.

MUNSON, C.J., and ROE, J., concur.

Reconsideration denied November 15, 1978.

Review granted by Supreme Court February 16, 1979.