199 P.3d 1029 (2009)
Doris Marie GREEN, a single person, Respondent,
v.
CITY OF WENATCHEE, Chelan County; David M. Bohr and Jane Doe Bohr, and the Marital Community composed thereof; Robert Perez, Jr. and Lucy Perez and the Marital Community composed thereof; Kenneth Badgley and Jane Doe Badgley and the Marital Community composed thereof; Roy Fore and Jane Doe Fore, and the Marital Community composed thereof; and John Does 1-5, Defendants,
Barker and Howard, P.S.; Jeffrey C. Barker and Debra L. Barker and the Marital Community formerly composed thereof, Respondents,
Westport Insurance Corporation, Appellant.
No. 26335-5-III.
Court of Appeals of Washington, Division 3.
January 20, 2009.
*1030 Laurence James Severance, Suzanne Lee Elliott, Attorneys at Law, Seattle, WA, Jeffrey Curtiss Barker, Barker Law Firm, Malaga, WA, for Respondent.
Curt E.H. Feig, Nicoll Black & Feig PLLC, Seattle, WA, Robert P. Conlon, Christopher A. Wadley, Walker, Wilcox, Matousek, LLP, Chicago, IL, for Appellant.
BROWN, J.
¶ 1 Intervenor, Westport Insurance Corporation (Westport) appeals from a Kittitas County Superior Court order finding reasonable a $1 million consent judgment for Doris Marie Green against attorney Jeffrey Barker and his law firm Barker & Howard (collectively "Mr. Barker"), who was Westport's insured under a legal malpractice policy. Westport contends the court erred when it ruled: (1) Westport was bound, for purposes of the reasonableness proceeding, by agreed findings of fact and conclusions of law entered as part of a settlement agreement in which Mr. Barker stipulated to liability stemming from his representation of Ms. Green in a child sex abuse prosecution, and (2) that the amount of the consent judgment was reasonable. We agree with Westport that the trial court was not bound by the agreed findings of fact and conclusions of law. Accordingly, we vacate the reasonableness order and remand the matter to the trial court for further proceedings.

BACKGROUND
¶ 2 In 1994, Ms. Green was charged with three counts of first degree child rape and one count of first degree child molestation after she purportedly confessed to Wenatchee Police Detective Robert Perez that she sexually abused two children (the H. children). Mr. Barker's law firm (Barker & Howard) was Chelan County's contract public defender and Mr. Barker personally took on Ms. Green's representation. Mr. Barker withdrew, however, after approximately 26 days due to a conflict because a member of his firm had previously represented S.H. (the father of the children Ms. Green was charged with sexually abusing) in a sex offense prosecution. Mr. H. had pleaded guilty to sex *1031 abuse charges before Ms. Green was arrested. Mr. Barker arranged for private attorney David Bohr to represent Ms. Green, who remained in jail pending trial.
¶ 3 Ms. Green maintained her innocence and Mr. Bohr prepared her case for trial. The court held a CrR 3.5 hearing and ruled her confession voluntary and admissible. The case proceeded to trial in January 1995. The H. children testified in detail that Ms. Green sexually abused them. Ms. Green testified and denied the allegations. She said her statements to Detective Perez were involuntary and that he fabricated the confession. Ms. Green was convicted, as charged, and received a 280-month prison sentence. This court affirmed the convictions. See State v. Green, No. 14717-7-III (Wash.Ct. App. May 20, 1997).
¶4 Contemporaneous with Ms. Green's criminal prosecution, the State filed dependency petitions concerning her four children. Attorney Rebecca Shaw, an associate in Mr. Barker's office, represented Ms. Green in those proceedings. Mr. Barker did not perceive a conflict from Ms. Shaw's representation in light of Mr. H.'s earlier guilty plea. Moreover, Ms. Green requested that Ms. Shaw represent her in the dependencies. The trial court ultimately terminated Ms. Green's parental rights, largely due to her criminal conviction. This court reversed the parental rights terminations in 1999 because the State failed to provide Ms. Green with services capable of correcting her parental deficiencies. See In re J.A., 98 Wash.App. 1051, 1999 WL 1271873, No. 16201-0-III (Wash.Ct.App. Dec.30, 1999).
¶ 5 Meanwhile, in October 1998, Ms. Green filed a personal restraint petition and received a reference hearing to determine the voluntariness of her statements to Detective Perez. The State first agreed that Ms. Green should receive a new trial, but ultimately elected to dismiss the charges with prejudice on December 28, 1999. Her criminal conviction was vacated.

MS. GREEN'S CIVIL LAWSUIT
¶ 6 On February 28, 2001, Ms. Green sued numerous defendants in Chelan County, including the City of Wenatchee, Detective Perez, Chief of Police Kenneth Badgley (Wenatchee defendants), Chelan County, Deputy Prosecutor Roy Fore (Chelan County defendants), Mr. Barker and his law firm, and Mr. Bohr. Ms. Green alleged federal civil rights violations and various state law claims, including legal malpractice against Messrs. Barker and Bohr; breach of contract against Mr. Barker as a claimed third-party beneficiary of the Chelan County indigent defense contract; and violation of the Consumer Protection Act, (CPA), chapter 19.86 RCW, by Mr. Barker.
¶ 7 Westport defended Mr. Barker under a $500,000 aggregate legal malpractice insurance policy that declined as defense costs were paid. Mr. Barker had contemporaneously been sued for malpractice by three other criminal defendants  Henry Cunningham, Manuel Rodriguez, and Ralph Gausvik. All four cases were subject to the aggregate $500,000 policy limit. Westport retained attorney Joel Wright to represent Mr. Barker in each matter. In March 2001, Ms. Green's case was removed to federal district court. Each defendant (including Mr. Barker in November 2002) filed a motion for summary judgment dismissal of Ms. Green's federal and state claims.
¶ 8 Meanwhile, settlement discussions ensued in all four lawsuits. In October 2002, the four plaintiffs offered to globally settle for $400,000. Mr. Wright responded on November 13, 2002, "On behalf of Barker & Howard, we offer the balance of the Westport insurance policy limits, currently estimated to be in excess of $150,000 but definitely less than $190,000." Clerk's Papers (CP) at 920. On November 14, the plaintiffs counter-offered to settle for $325,000. Mr. Barker instructed Mr. Wright to decline the offer. With regard to Ms. Green, Mr. Barker stated, "I do not feel a real risk in this case and certainly not so great a risk as to exhaust my coverage, which this type of settlement would surely do." CP at 901. Mr. Barker further stated, "A counter offer of $10,000 to $15,000 for each Green and Cunningham may be appropriate." Id. Mr. Barker also stated that he perceived the most risk from the Gausvik case, which Mr. *1032 Wright was later able to settle for $35,000. Ms. Green also settled for $46,561.25 with Mr. Bohr, who was insured under a $1 million liability policy.
¶ 9 In February and March 2003, the Federal district court entered summary judgment orders dismissing the federal claims against all defendants except Detective Perez, and remanding Ms. Green's state claims to Chelan County Superior Court. In July 2003, Ms. Green settled with the Chelan County defendants for $35,962.50. Venue was transferred to Kittitas County in April 2004. In July 2004, the court summarily dismissed, as barred by the statutes of limitations, Ms. Green's state law false arrest/imprisonment claims against the Wenatchee defendants. The court determined that these tort claims accrued when Ms. Green was sentenced on March 6, 1995, and were time-barred when Ms. Green filed her lawsuit on February 28, 2001.
¶ 10 By March 2005, Westport had fulfilled its contractual obligation to pay $500,000 on behalf of Mr. Barker. Mr. Wright then withdrew as counsel. Mr. Barker thereafter represented himself in the lawsuits. In September 2005, Ms. Green settled her remaining claims with the Wenatchee defendants for $30,000. Ms. Green thus settled with all defendants except Mr. Barker for an aggregate $112,523.75.
¶ 11 In late 2005, Mr. Barker entered into a joint settlement agreement to resolve the Green, Cunningham and Rodriguez cases. Mr. Barker agreed to pay Ms. Green $5,000, from which she agreed to pay $1,000 each to Messrs. Cunningham and Rodriguez. Mr. Barker also agreed to grant Ms. Green a $45,000 lien against his real estate interests. Mr. Barker further agreed to consent judgments against him in favor of Green, Cunningham, and Rodriguez for $1 million, $500,000, and $3.5 million respectively, with the promise they would not execute the judgments against him personally. As consideration for the covenants not to execute, Mr. Barker assigned to the plaintiffs his rights to pursue insurance bad faith claims against Westport. The settlement agreement also provided:
Barker further acknowledges that while his dealings with Green, Cunningham, and Rodriguez in the Kittitas County and Chelan County cases have been adverse in many respects, they nevertheless have shared common legal interests concerning insurance coverage and proper insurer performance, and further, that after this settlement, their common legal interests will be enhanced.
CP at 2170-171.
¶ 12 On December 5, 2005, Ms. Green filed a motion in the superior court with an accompanying legal memorandum seeking determination that the agreed settlement and consent judgment for $1 million was reasonable. Ms. Green tendered proposed findings of fact and conclusions of law stipulated to by Ms. Green and Mr. Barker, to the effect that Ms. Green was wrongfully convicted and incarcerated for 4.8 years; her parental rights were wrongfully terminated as a proximate result of the wrongful conviction and incarceration; Mr. Barker and his firm incompetently represented her and continued to represent her in the dependency matter despite a conflict of interest; Mr. Barker hired a substitute attorney, Mr. Bohr, whom Mr. Barker should have known lacked minimum competence as a trial attorney in complex sex offense cases.
¶ 13 Based upon the findings, the parties stipulated to conclusions of law that Mr. Barker breached duties owed Ms. Green under the public defense contract and to assure adequate legal representation, proximately resulting in damages of not less than $1 million to Ms. Green due to her wrongful incarceration and traumatic breakup of her family. The parties further stipulated that Mr. Barker violated duties owed Ms. Green under the CPA.
¶ 14 Accompanying Ms. Green's motion and memorandum were the proposed consent judgment, Mr. Bohr's deposition, and documents from legal and psychological experts in support of the parties' stipulations of breach of contract, legal malpractice, attorney conflict, and Ms. Green's resulting damages. Ms. Green noted the reasonableness hearing for December 15, 2005, but struck it at Westport's request because Westport had *1033 not received a copy of the settlement agreement and needed more time to evaluate Ms. Green's motion. Westport requested a copy of Mr. Barker's defense file, but did not receive the requested materials until April 2006.
¶ 15 Meanwhile, on March 23, 2006, Ms. Green noted the matter for a hearing on April 10, to address reasonableness of the agreed settlement and consent judgment and presentation of the agreed findings of fact, conclusions of law and judgment against Mr. Barker. Westport opposed Ms. Green's motion to the extent she was seeking to bind Westport. Westport also sought an order for limited discovery so it could intervene to contest the reasonableness of the settlement and consent judgment on pertinent factors, including the merits of Ms. Green's claims against Mr. Barker and Mr. Barker's defense theories.
¶ 16 At the April 10, 2006 hearing, the court entered the agreed findings of fact, conclusions of law and consent judgment. Westport did not object to any of the agreed findings or conclusions, or to their entry. The court then ordered that Westport intervene in the action; that Mr. Barker release his defense file to Westport; and that the parties engage in non-repetitive discovery. The consent judgment expressly reserved "the right and opportunity for Westport Insurance Company to participate in a reasonableness hearing regarding said judgment amount." CP at 821. Westport then moved to intervene and the court granted that motion on May 3, 2006.
¶ 17 Westport conducted discovery, and on September 20, 2006, filed a memorandum in opposition to Ms. Green's motion for a reasonableness determination. Westport included discovery materials to support its position that the consent judgment was unreasonable because Ms. Green could not prove her actual innocence, her claims against Mr. Barker lacked substantive merit and were barred by statutes of limitations, the judgment amount was grossly disproportionate to amounts Ms. Green accepted from other defendants, and the consent judgment was the product of collusion.
¶ 18 The parties exchanged further pleadings on these issues and the additional question whether Westport was bound by the agreed findings and conclusions establishing Mr. Barker's liability when it did not object to their entry on April 10, or earlier seek to intervene. Ms. Green argued Mr. Barker's liability was established for purposes of the reasonableness hearing and the only issue before the trial court was whether the damages sustained by Ms. Green justified an award of $1 million.
¶ 19 After a hearing on September 26, 2006, the court issued a memorandum decision agreeing with Ms. Green. Specifically, relying on Fisher v. Allstate Insurance Company, 136 Wash.2d 240, 246, 961 P.2d 350 (1998), the court ruled that Westport, which had notice of the lawsuit and had represented Mr. Barker for almost four years, was bound by the findings of fact, conclusions of law and consent judgment because it did not seek to intervene in the lawsuit to challenge Mr. Barker's liability. The court thus confined the issue to whether $1 million was a reasonable judgment. The court ruled the amount reasonable because Ms. Green's pleadings showed damages in that range and Westport presented no evidence to the contrary.
¶ 20 Westport moved for reconsideration. On December 26, 2006, the court entered a second memorandum decision and order denying Westport's motion. The court adhered to its earlier ruling that Westport was bound, under Fisher, by the stipulated findings as to Mr. Barker's liability because it had notice and did not intervene prior to their entry. The court partly reasoned:
[I]n determining that the Fisher decision applied to Westport, the court did not mean to infer that Westport was precluded from arguing the ... Chaussee [Chaussee v. Md. Cas. Co., 60 Wash.App. 504, 803 P.2d 1339 (1991)] factors insofar as the reasonable [sic] of the judgment was concerned. In no way was Westport equitably estopped from arguing the reasonableness of the judgment against Barker merely because it had not participated in the stipulated judgment.

*1034 In the context of determining the reasonableness of the judgment, the court considered all evidence presented by both sides in arriving at its conclusion. First, there was ample evidence to support Green's claim in the amount of $1,000,000.00 in damages, as she was incarcerated for 4-½ years and lost her parental rights to each of her four children as a result of the incarceration. Westport did not present evidence to rebut the substantial damage. As indicated by the court, Westport focused on Barker's liability. Barker, by his agreement, was bound by the stipulated findings making [him] liable. Westport, by not intervening prior to entry, is bound by the stipulated findings making him liable. The court did not mean, however, that in the context of the reasonableness of the judgment against Barker, that it could not consider Westport's argument that it was David Bohr's representation, not Barker's, that led to Ms. Green's incarceration. The court did consider Westport's arguments. All told, however, there was ample evidence to support the plaintiff's theory on liability for purposes of the reasonableness of [the] settlement. The court also considered Ms. Green's relative fault, if any. The bottom line, however, was and is that Mr. Barker was assigned to protect Ms. Green's constitutional rights and he neglected to do so. Equating Mr. Barker's failure to protect Ms. Green's constitutional rights with other defendants who did not have the same professional relationship and against whom Ms. Green had other theories to support her causes of action does not diminish Mr. Barker's responsibility.
. . . .
In reaching a settlement with Ms. Green there has been advanced no evidence that Mr. Barker or his law firm colluded with Ms. Green and/or her attorneys in reaching [a] settlement. Mr. Barker and his firm resisted the Green claims for over four years and, after Westport withdrew its representation of Mr. Barker, Mr. Barker maintained that he had the ability to represent himself. As he was in the practice of law and needed malpractice insurance, he in no way had any incentive to collude against his insurer. Moreover, Mr. Barker has not repudiated any of the findings or conclusions to which he stipulated. Mr. Barker is bound by his agreement that he is liable for the judgment.
CP at 2403-404 (emphasis added).
¶ 21 On January 22, 2007, the court entered an order incorporating both memorandum decisions as its findings and conclusions and declaring the April 10, 2006 consent judgment reasonable. Westport appeals.

ANALYSIS
¶ 22 The first issue is whether the court erred when it ruled that Westport was bound, for purposes of the reasonableness hearing, by the agreed findings of fact and conclusions of law establishing Mr. Barker's liability to Ms. Green. This presents a question of law reviewed de novo. See Sherry v. Fin. Indem. Co., 160 Wash.2d 611, 617, 160 P.3d 31 (2007).
¶ 23 Generally, "an insurer will be bound by the `findings, conclusions, and judgment' entered in the action against the tortfeasor when it has notice and an opportunity to intervene in the underlying action.'" Fisher, 136 Wash.2d at 246, 961 P.2d 350 (quoting Finney v. Farmers Ins. Co., 21 Wash.App. 601, 618, 586 P.2d 519 (1978), aff'd, 92 Wash.2d 748, 600 P.2d 1272 (1979)). The policy reasons for the rule are to avoid inconsistent judgments, delay, additional expense, and the creation of a perverse incentive for carriers to wait until liability and damages have been established before deciding whether it is cost-effective to intervene. Fisher, 136 Wash.2d at 249, 961 P.2d 350. But "collateral estoppel precludes only those issues that have actually been litigated and determined." McDaniels v. Carlson, 108 Wash.2d 299, 305, 738 P.2d 254 (1987). Thus, when an earlier judgment was entered upon stipulated findings of fact and embodying a settlement of the parties, courts have refused to bind persons not actually participating in the stipulations. Id. (citing PHILIP A. TRAUTMAN, Claim and Issue Preclusion in Civil Litigation in Washington, 60 Wash. L.Rev. 805, 833 (1985); Yakima Cement Prods. Co. *1035 v. Great Am. Ins. Co., 14 Wash.App. 557, 544 P.2d 763 (1975)).
¶ 24 These competing principles come into focus because Westport did not settle the Green lawsuit during the time it represented Mr. Barker, nor was it a participant in the settlement. When an insurer refuses to settle a claim in a liability lawsuit, the insured may, without the insurer's consent, negotiate a settlement with the plaintiff and assign the coverage and bad faith claims to the plaintiff in exchange for a covenant not to execute against the insured. See Red Oaks Condo. Owners Ass'n v. Sundquist Holdings, Inc., 128 Wash.App. 317, 322, 116 P.3d 404 (2005); Chaussee v. Md. Cas. Co., 60 Wash.App. 504, 512, 803 P.2d 1339 (1991). If the consent judgment is reasonable, it becomes the presumptive measure of damages in a subsequent bad faith action against the insurer. Besel v. Viking Ins. Co. of Wis., 146 Wash.2d 730, 738, 49 P.3d 887 (2002). "Because a covenant not to execute raises the specter of collusive or fraudulent settlements, the limitation on an insurer's liability for settlement amounts is all the more important." Id.
¶ 25 Thus, to protect insurers from excessive consent judgments, trial courts determine whether the settlement is reasonable using the procedure adopted in Chaussee and approved in Besel. The court considers the following factors to determine if a settlement is reasonable: (1) the releasing party's damages; (2) the merits of the releasing party's liability theory; (3) the merits of the released party's defense theory; (4) the released party's relative fault; (5) the risks and expenses of continued litigation; (6) the released party's ability to pay; (7) any evidence of bad faith, collusion, or fraud; (8) the extent of the releasing party's investigation and preparation; and (9) the interests of the parties not being released. Besel, 146 Wash.2d at 738, 49 P.3d 887; Chaussee, 60 Wash.App. at 512, 803 P.2d 1339 (quoting Glover v. Tacoma Gen. Hosp., 98 Wash.2d 708, 717, 658 P.2d 1230 (1983)). Not all factors are necessarily relevant in a given case. Werlinger v. Warner, 126 Wash.App. 342, 351, 109 P.3d 22 (2005).
¶ 26 In view of the above principles, Westport first contends the trial court erred in applying Fisher and binding Westport to the stipulated findings and conclusions from the Green/Barker settlement that were not litigated, not essential to the court's resolution of the liability case, and not necessary to the judgment. Yakima Cement Prods. Co., 14 Wash.App. 557, 544 P.2d 763. Moreover, Westport contends it fully preserved its challenge to the reasonableness of the consent judgment and timely intervened to do so. Westport thus concludes the court erred by summarily binding it to Mr. Barker's liability concessions and failing to address the merits of Ms. Green's liability claims and Mr. Barker's defenses as required by Chaussee. We agree.
¶ 27 The very purpose of a reasonableness hearing is to determine whether the settlement of the underlying liability case is reasonable under the Chaussee factors. Besel, 146 Wash.2d at 738, 49 P.3d 887; Chaussee, 60 Wash.App. at 512, 803 P.2d 1339; see Mutual of Enumclaw Ins. Co. v. T & G Constr., Inc., Nos. 56144-8-I, 57679-8-I, 137 Wash.App. 1055, 2007 WL 959894, 165 Wash.2d 255, ____, 199 P.3d 376, 379-80. A critical point is that the validity of the settlement agreement between the plaintiff and defendant and the amount paid are unaffected by the reasonableness determination. Meadow Valley Owners Ass'n v. St. Paul Fire & Marine Ins. Co., 137 Wash.App. 810, 819-20, 156 P.3d 240 (2007); see RCW 4.22.060(2),(3). Thus, as further argued by Westport, Ms. Green and Mr. Barker were free to resolve their liability issues; Westport had no standing to challenge that agreement.
¶ 28 Yakima Cement Products Company illustrates these principles. There, in a prior action, plaintiff subcontractor sued a contractor in federal court; the contractor counterclaimed. The plaintiff's insurer refused to defend the counterclaim based upon policy language. The parties settled and, per their request, the court entered agreed findings of fact, conclusions of law, and a judgment embodying their settlement. Counsel for the insurance company appeared, admittedly without standing, and unsuccessfully objected *1036 to the entry of findings and conclusions on the basis the matter had been settled, and thus the only purpose for the entry of findings would be to attempt to collaterally estop the insurer in a future action on the issue of coverage. Yakima Cement Prods. Co., 14 Wash.App. at 558-59, 544 P.2d 763. The plaintiff then commenced a breach of contract action against the insurer. The trial court rejected plaintiff's coverage claims, as well as plaintiff's contention that the findings and conclusions in the federal court action, which recited facts invoking coverage under the insurance policy, were binding on the insurer in the subsequent action. This court affirmed, reasoning that collateral estoppel did not apply to the insurer because the issues settled by the parties in the federal matter were never litigated. Id. at 561-62, 544 P.2d 763. Thus, Fed.R.Civ.P. 52 did not require the entry of findings and conclusions in an action that had been compromised and settled, and entry of findings was therefore not necessary to the termination of that action. Yakima Cement Prods. Co., 14 Wash. App. at 562, 544 P.2d 763. The court then held that the findings were ineffective, not binding, and could not be used to collaterally estop the insurer in the subsequent action. Id.; see McDaniels, 108 Wash.2d at 305, 738 P.2d 254 (settlement not binding against persons not actually participating in stipulation).
¶ 29 The Fed.R.Civ.P. 52 counterpart in Washington is CR 52, which likewise does not require the entry of findings in an action that has been settled. See In re Prather, 178 B.R. 501, 502 (W.D.Wash.1995) (construing CR 52 and citing Yakima Cement Prods. Co., 14 Wash.App. at 562, 544 P.2d 763). Indeed, CR 52 unambiguously requires findings of fact and conclusions of law (subject to certain exceptions), "[i]n all actions tried upon the facts without a jury or with an advisory jury." CR 52(a). Here, since the underlying liability lawsuit in this matter was settled, Mr. Barker's and Ms. Green's agreed findings and conclusions were not necessary. As in Yakima Cement Products Company, the CR 52 findings requirement does not apply and Westport had no standing to challenge the agreed findings and conclusions embodying the settlement to which it was not a party.
¶ 30 Westport's position that the relevant Chaussee factors including the merits of Ms. Green's case and Mr. Barker's defenses must be specifically addressed finds strong support in T & G Constr., Inc., 2008 WL 4670256. There, the insurer (Mutual of Enumclaw "MOE") vigorously defended its insured (T & G) until MOE declined to participate in the final round of settlement talks. MOE then challenged the settlement at a reasonableness hearing. A separate coverage action ensued and MOE challenged its obligation to pay, primarily contending it was not legally obligated under the policy language because T & G should have prevailed on a statute of limitations affirmative defense in the liability case. But the judge in the underlying liability case had rejected that affirmative defense several times, including at summary judgment and at the reasonableness hearing. Id. 2008 WL 4670256, at *1-2.
¶ 31 In binding MOE to the result in the underlying liability action and the reasonableness hearing, the Supreme Court partly reasoned:
The merits of the homeowners' liability case and the merits of T & G's defense theories were, of course, central to any settlement because whether to settle, and under what terms, turned in large part on the risk of an adverse judgment. Those same issues must be carefully considered in any judicial proceeding to determine the reasonableness of the settlement. Like any issue touching on the liability of a releasing party, T & G's statute of limitation defense had to have been considered by the parties during settlement discussions and was carefully evaluated by the judge both at summary judgment and at the reasonableness hearing.

. . . .
.... MOE's insured was already allowed to argue the statute of limitations defense theory in the liability suit. In the liability suit, MOE's interest and its insured's interest in advancing the statute of limitation defense were one and the same. When the insured lost on its motion for summary judgment on the statute of limitation defense, both T & G and MOE were put at *1037 risk of an adverse judgment. T & G had no reason not to vigorously assert its theory. Third, there is nothing special about the statute of limitations defense when, as here, it largely turns on disputed facts. It is just an affirmative defense like any other affirmative defense. Allowing the insurer to relitigate it in the coverage suit once liability has been evaluated and a settlement judicially approved runs afoul [of] the very policy concerns articulated in Fisher.

Id. 2008 WL 4670256, at *4 (emphasis added).
¶ 32 Thus, while Fisher did apply in T & G Constr., that case illustrates why Fisher does not apply here. While the liability case was still in federal court, Westport filed on Mr. Barker's behalf a motion for summary judgment and comprehensive memorandum seeking dismissal of all claims, both on the merits and under affirmative statute of limitations defenses. The district court dismissed Ms. Green's federal claims. It did not address the state claims and instead remanded them to the superior court. Mr. Barker did not re-assert his summary judgment motion in state court. Thus, the merits of Ms. Green's liability theories and Mr. Barker's defenses were never judicially addressed in the state court liability action prior to the settlement. Critically, in contrast to T & G Construction, the court bound Westport to Mr. Barker's liability stipulation without making particular reasonableness findings addressing Mr. Barker's defenses, including the statutes of limitations.
¶ 33 During the April 2006 proceedings, Westport clearly preserved its right to challenge the reasonableness of the settlement under all of the Chaussee factors without any binding effect of the Green/Barker stipulation. Ms. Green's claims to the contrary rest upon the incorrect assumption that Westport had standing to intervene for the purpose of challenging the Green/Barker agreed findings and conclusions. Moreover, the policy concerns expressed in Fisher, 136 Wash.2d at 249, 961 P.2d 350, are not present here because the reasonableness result was still pending when Westport promptly complied with the court's May 2006 order to intervene.
¶ 34 Given all, we conclude that the trial court erred in binding Westport to the agreed findings and conclusions regarding Mr. Barker's liability. Those findings and conclusions are impertinent to the reasonableness proceeding and do not collaterally estop or bind Westport. Thus, the issue becomes whether the trial court erred in entering its January 22, 2007 order declaring the consent judgment reasonable; and, if erroneous, what remedy is appropriate.
¶ 35 We review the trial court's determination of reasonableness for abuse of discretion. Werlinger, 126 Wash.App. at 349, 109 P.3d 22. Abuse of discretion occurs when a decision rests on untenable grounds or is manifestly unreasonable. Mayer v. Sto Indus., Inc., 156 Wash.2d 677, 684, 132 P.3d 115 (2006). "[A]n incorrect legal analysis or other error of law can constitute [an] abuse of discretion." State v. Tobin, 161 Wash.2d 517, 523, 166 P.3d 1167 (2007). In determining reasonableness, the trial court makes factual determinations that will not be disturbed on appeal when supported by substantial evidence. Schmidt v. Cornerstone Invs., Inc., 115 Wash.2d 148, 158, 795 P.2d 1143 (1990).
¶ 36 Westport asserts that when the agreed findings are set aside and all relevant Chaussee factors are addressed, the consent judgment must be deemed unreasonable as a matter of law because all of Ms. Green's claims lacked substantive merit, her tort and CPA claims were time-barred, the amount of the consent judgment was disproportionate to sums paid by other defendants, and the consent judgment was the product of collusion. Westport alternatively requests a remand for a new reasonableness hearing.
¶ 37 Ms. Green, on the other hand, contends the court's discretion was not abused because the trial court expressly stated it considered all of the Chaussee factors and the record contains substantial evidence to support the court's findings as to each factor that Westport challenges. We reject Ms. Green's arguments.
¶ 38 Although the trial court did state in its second memorandum decision that it considered the record in light of the Chaussee factors, it is clear the court considered Westport *1038 bound by the agreed liability findings and conclusions because it did not intervene to challenge them and because Mr. Barker remains bound. In our view, this legal error results in an abuse of discretion because the trial court entered conclusory liability findings under Chaussee, without specifically addressing the merits of Ms. Green's tort, contract, and CPA claims. The court's findings do not mention Mr. Barker's statute of limitations defenses or substantive defenses, except to recognize Westport's argument that any actionable negligence was attributable to Mr. Bohr, not Mr. Barker.
¶ 39 Accordingly, we vacate the January 22, 2007 order declaring the consent judgment amount reasonable and remand the matter to the trial court to reconsider the Chaussee factors, while giving no effect to the Green/Barker agreed liability findings and conclusions. We direct the trial court to enter findings of fact reflecting its consideration of each relevant Chaussee factor based upon the facts and law at the time of the settlement. See Mavroudis v. Pittsburgh-Corning Corp., 86 Wash.App. 22, 38, 935 P.2d 684 (1997). Consistent with the reasoning in T & G Construction, 2008 WL 4670256, at *4, the trial court should first address Mr. Barker's statute of limitations defenses before considering the merits of any of Ms. Green's tort, CPA, and contract claims that it deems not time-barred, and Mr. Barker's defenses to those claims. The trial court will then determine what settlement amount is reasonable in view of its Chaussee factor analysis. See Meadow Valley Owners Ass'n v. St. Paul Fire & Marine Ins. Co., 137 Wash.App. 810, 156 P.3d 240 (2007).
¶ 40 The January 22, 2007 reasonableness order is vacated and the matter remanded to the trial court for further proceedings consistent with this opinion.
WE CONCUR: SCHULTHEIS, C.J., and KORSMO, J.