# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| STATE FARM FIRE & CASUALTY CO., an Illinois corporation,<br><br>                        Respondent,<br><br>    v.<br><br>ROBERT CHARLES JUSTUS, a single man,<br><br>                        Appellant,<br><br>WILLIAM D. MORGAN and DONNA L. MORGAN, husband and wife; CORINNE M. TOBECK as Personal Representative of the Estate of JOSEPH "JOEY" TOBECK; VERNON A. TOBECK, natural father of decedent Joseph "Joey" Tobeck; and APRIL D. NORMAN, natural mother of decedent Joseph "Joey" Tobeck,<br><br>                        Defendants. | No.  47913-3-II<br>(Linked w/ No. 47196-5-II)<br><br><br>PUBLISHED OPINION |

BJORGEN, C.J. — This appeal, *State Farm v. Justus*[1], has its origins in Robert Justus'

claim for negligent wrongful detention against William and Donna Morgan for an incident in

---

[1] This opinion decides the appeal in No. 47913-3-II.  We refer to this appeal as *State Farm v. Justus*.  We refer to the linked case noted in the appeal, No. 47196-5-II, as *Justus v. State Farm*. The linked appeal is decided by a separate opinion.

which William[2] shot at and held Justus at gunpoint. Justus alleged in his lawsuit against the

Morgans that William wrongfully detained him on two occasions during the incident. He now

argues that William's umbrella insurance policy with State Farm Fire and Casualty Company

provides coverage for this claim.

In the linked case, *Justus v. State Farm*, No. 47196-5-II, we upheld the determination that

a covenant judgment settlement between Justus and the Morgans relating to the claimed

wrongful detention was reasonable. In the covenant judgment settlement, the Morgans stipulated

to a judgment in favor of Justus, Justus agreed not to execute the judgment against the Morgans,

and the Morgans assigned to Justus all claims they may have against State Farm. We also held

that the settlement court[3] did not abuse its discretion in declining to rule whether William's

actions in the incident were negligent or intentional.

During the covenant judgment settlement proceedings, State Farm filed a separate

declaratory judgment action to determine whether the Morgans' umbrella liability insurance

policy provided coverage for William's actions. Justus filed counterclaims alleging bad faith,

violation of the Consumer Protection Act (CPA), chapter 19.86 RCW, and violation of the

Insurance Fair Conduct Act (IFCA), RCW 48.30.010.015 (extra contractual claims), and an

associated motion to compel production of the Morgans' claim file in State Farm's possession.

The present appeal is of the trial court's decisions of this declaratory judgment action,

counterclaims, and motion to compel.

---

[2] Because William and Donna have the same last name, we refer to them individually by their first names to avoid confusion. No disrespect is intended.

[3] We refer to the superior court that approved the covenant judgment settlement as the "settlement court" and the superior court in the present appeal as the "trial court."

After a bench trial, the trial court ruled that State Farm was not required to indemnify the Morgans because William's actions could only constitute intentional acts of false arrest and false imprisonment, each of which would be time barred under the applicable statute of limitations. The trial court also denied Justus' motion to compel production of the Morgans' claim file and granted summary judgment in favor of State Farm on all of Justus' extra contractual claims

Justus appeals the trial court's rulings, arguing that (1) the settlement court's earlier ruling regarding the covenant judgment settlement collaterally estopped the trial court from determining underlying liability, i.e. whether William's actions were negligent or intentional; (2) the trial court erred in concluding that William's actions did not support a negligent wrongful detention claim and only showed intentional conduct supporting a false arrest or a false imprisonment claim; and (3) the trial court erred when it denied Justus' motion to compel discovery of the pertinent insurance claim file in State Farm's possession and when it subsequently granted summary judgment to State Farm dismissing his extra contractual claims.

We first hold that the trial court was not collaterally estopped by the settlement court's earlier ruling. We assume, without deciding, that a tort of negligent wrongful detention is available in Washington, but hold that the trial court did not err by ruling that William's actions could only constitute the intentional torts of false arrest or false imprisonment, both of which would be time barred. Because Justus failed to establish William's liability in negligence on these facts, we do not need to reach Justus' other arguments related to whether William's umbrella insurance policy with State Farm would cover his conduct. However, we also hold that the trial court's denial of Justus' motion to compel the claim file was erroneous, requiring reversal of the summary judgment ruling dismissing Justus' extra contractual claims.

Accordingly, we affirm in part, reverse in part, and remand with instructions detailed in this opinion.

FACTS

Because Justus' attorney conceded that he is not challenging any of the trial court's findings of fact, they are verities.[4] *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 808, 828 P.2d 549 (1992). As such, they establish the following factual narrative underlying this case:

> 12. Defendants William and Donna Morgan live toward the end of a private road in rural Roy, Washington. . . . Around 10:00 p.m. on Wednesday June 9, 2010, [Donna] was in bed reading when she heard some loud banging sounds outside. . . . After being informed of the noises by his wife, [William] grabbed a Sig Sauer pistol he kept at the home, retrieved a flashlight, and then went outside to investigate.
>
> . . . .
>
> 14. As [William] walked down his driveway toward the source of the noise, he heard and then saw a pickup truck with no lights on parked on the private roadway. The Morgans' home . . . is on the south side of the roadway. The pickup truck was pointed eastbound, on the north side of the roadway of 358th Street South. As [William] got closer, he saw that two individuals—Robert Justus and Joseph Tobeck—had loaded some large metal pipes into their pickup truck. The pipes belonged to [William] and he was storing them across the road from his house for future use. . . . [William] called back to his wife, who was still in the house, and told her to call 9-1-1; she complied.
>
> . . . .
>
> 17. [William] confronted Mr. Justus and Mr. Tobeck, saying "Hey, you have my pipe." [William] held the pistol and pointed it directly at Mr. Justus. Mr. Justus tried to talk with [William] and tried to calm him down. [William] got

---

[4] At oral argument before our court, when questioned about which factual findings he was specifically challenging, Justus' attorney stated, "To be honest with you, your honor, after reading the findings of fact . . . I agreed with most of the findings of fact, in fact, *all of them*, and the fact that I agree with *all of them*." See Wash. Court of Appeals, *State Farm v. Justus*, No. 47913-3-II, Oral Argument (December 6, 2016), at 6 min. (on file with our court) (emphasis added).

madder and madder. Mr. Justus and Mr. Tobeck did not remove the pipes from their truck. Mr. Justus and Mr. Tobeck got into the truck, and began driving away, to the east on 358th Street South. The roadway dead-ended a short distance to the east. Mr. Tobeck, driving the pickup truck, executed a 180-degree turn to the left. This turn was begun in front of 8418 - 358th Street South. Thereafter, the pickup truck was headed westbound.

18. [William] fired nine shots from his pistol. At least seven of the shots hit the passenger cab of the truck. Four bullets entered the front windshield. One bullet came from the rear and exited out of the front windshield; one bullet entered the driver's side door window; and one entered the rear window and was recovered in the headliner. One of the bullets struck Mr. Tobeck in the head. The truck went out of control and hit a tree.

. . . .

20. Mr. Justus climbed out of the passenger window after the truck hit the tree. [William] yelled at Mr. Justus to lie down in the street and spread out his arms. Mr. Justus complied.

21. Pierce County Sheriff's Deputy Jeffrey Johnson was the first responder to arrive on the scene. He arrived at 22:18. This was less than 11 minutes after [Donna] first called 9-1-1.

22. Deputy Johnson observed Mr. Justus lying in the roadway. He observed that Mr. Justus's face was bloody. The neighbors pointed out [William] as being the shooter. Deputy Johnson took [William]'s handgun from [William]'s back pocket, handcuffed him, and placed him in the patrol car.

. . . .

24. Mr. Tobeck was transported to Madigan Hospital where he died the next day.

25. Deputy Johnson inspected [William]'s handgun and found it to be a .40 caliber Sig Sauer semi-automatic handgun, with one round in the chamber and two rounds in the magazine.

26. [William] does not remember firing the gun. [William] is a gun enthusiast and owns many guns. Over the years, he has had substantial training in the use of guns. Prior to the incident, he generally practiced his firearms skills several times every week by engaging in target practice at local gun clubs. He was a member of two different gun clubs, and accompanied his friends to other clubs.

27. Mr. Justus suffers severe post-traumatic stress disorder (PTSD) as a result of the events of June 9, 2010. Mr. Justus began seeing Gloria Roettger, a mental health therapist, on April 3, 2013, as a referral from attorney Kevin Johnson. Since then, there have been 75 visits. Mr. Justus's PTSD symptoms include significant startle reflex, recurring memories of the traumatic event, nightmares, depression, high anxiety, stress, fear, anger, disassociation, and fear of leaving home.

Clerk's Papers at 2344-46.

Justus sued William on June 26, 2012, over two years after the incident, alleging, among other things, a claim against William for "negligent" wrongful detention. CP at 678. State Farm agreed to provide a defense to the Morgans, but also reserved its rights to challenge insurance coverage for any judgment ultimately entered against the Morgans.

Both parties moved for summary judgment on Justus' wrongful detention claim, and the trial court denied both motions due to outstanding issues of material fact.

Eventually, Justus and the Morgans entered into a covenant judgment settlement of Justus' claims against William, which had the following contractual features: a stipulation by the Morgans to a judgment in favor of Justus, a covenant binding Justus to not execute the stipulated judgment against the Morgans, and an assignment by the Morgans of all their claims against State Farm to Justus, including coverage and extra contractual claims. *Justus v. State Farm.*

Justus moved for a determination that the settlement was reasonable, and State Farm intervened to oppose the settlement. State Farm argued that Justus' alleged claim of negligent wrongful detention was the equivalent of the intentional torts of false arrest or false imprisonment, which were time barred under the two year statute of limitations. *See Justus v. State Farm*; RCW 4.16.100(1); *Heckart v. City of Yakima*, 42 Wn. App. 38, 39, 708 P.2d 407 (1985).

In approving the reasonableness of the covenant judgment settlement, the settlement court recognized that State Farm had filed a separate declaratory action and stated that it "will not make findings as to whether or not or the degree to which Defendant [William]'s actions on June 9th, 2010, were intentional versus negligent." CP at 960. The court also decided that Justus would not be "time barred for any negligence-based claim *that is later found* to have arisen out of the events of June the 9th, 2010." CP at 966 (emphasis added). In the linked appeal of *Justus v. State Farm*, we upheld the settlement court's decision approving the reasonableness of the settlement. We reasoned that the settlement court did not abuse its discretion in declining to determine which of Justus' liability theories would succeed and that it was not required to decide if his actions were based on negligent or intentional conduct.

During these settlement proceedings, as already noted, State Farm filed a separate declaratory judgment action in the trial court, arguing that William's umbrella liability insurance policy did not provide coverage for his acts. Justus counterclaimed that William's umbrella policy covered his actions and that State Farm had engaged in bad faith and violated the CPA and IFCA through the assignment of extra contractual claims. The trial court ordered bifurcation of the case: the first segment to resolve the issue of coverage and the second to resolve Justus' extra contractual claims.

The parties proceeded to a bench trial on the coverage issues, in which the evidence established the narrative set out in the unchallenged findings above. At the end of the bench trial, the trial court entered the following conclusions of law on the coverage issues:

> 11. Mr. Justus did not file his lawsuit against the Morgans until more than two years after the June 9, 2010[] incident. Accordingly, any claims for false arrest or false imprisonment (or wrongful detention) were time barred by the time Mr. Justus filed his lawsuit.

12. No facts support a theory of negligence. At all times, the acts of [William] were intentional. He intentionally aimed the pistol and let Mr. Justus retreat. He again intentionally aimed the pistol at the truck and fired 9 rounds, 7 into the cab of the truck. There is nothing to support a negligent act.

CP at 2347. On this basis, the trial court determined that the Morgans' umbrella liability policy did not cover "the intentional acts of [William] on June 9, 2010[] because the statute of limitations had run." CP at 2348.

After this ruling, the parties returned to litigating Justus' extra contractual claims. Justus moved the court to compel State Farm to produce the insurance claim file regarding the incident, which would assist Justus in prosecuting his extra contractual claims. State Farm responded that attorney-client privilege still protected the claim file and that without a waiver from the Morgans, it could not produce the file. The Morgans' attorney replied by declaration that:

Defendant Justus has never made a formal request or request for production of the complete attorney file and/or all communications with State Farm. Mr. Justus' attorney, Kevin Johnson, has through email and oral conversations, requested that the Morgans waive their attorney-client privilege so that he may obtain certain files presumably in the custody of plaintiff State Farm.

CP at 2515.

Meanwhile, State Farm moved for summary judgment to dismiss Justus' extra contractual claims. At the summary judgment hearing, Justus narrowed his request to compel documents. Instead of requesting the entire insurance claim file, he asked for the claim file for the time period of June 2010, when the Morgans asked for attorney fees in their criminal case, to January 2012, when the first civil claim was filed against the Morgans.[5]

---

[5] Justus' written motion also sought to compel the Morgans' attorney to produce his "complete attorney file and all communications with State Farm." CP at 2377. At the hearing, Justus did not repeat this argument and appeared to withdraw it.

Justus emphasized that State Farm would not produce the insurance claim file without a waiver from the Morgans, but the Morgans would not grant the waiver, which Justus argued violated their settlement agreement. The covenant judgment settlement that the Morgans and Justus entered into reads in pertinent part,

> 4.      Assignment of Claims.  [The Morgans] shall assign [Justus] any and all of their rights against State Farm. . . .  [The Morgans] further acknowledge that [Justus has] the exclusive legal power and right to prosecute, compromise, settle, assign and otherwise control the Assigned Claims, at their sole expense. . . .  With the exception of whatever effect this assignment itself may have, [*the Morgans*] *represent that they have done nothing and will in the future do nothing to impair or otherwise adversely affect the Assigned Claims.*
>
> . . . .
>
> 6.      Cooperation.  *The Parties to this Agreement agree to provide reasonable cooperation in all matters for all talks and endeavors necessary to carry out or realize the terms of this Agreement.*

CP at 855-56 (emphasis added).

State Farm argued, among other matters, that without the Morgans' waiver it could not produce the requested portion of the claim file, since the requested portion contained privileged information. The court invited the Morgans' attorney to comment, and he stated that he had never received a formal discovery request for the claim file. The Morgans' attorney declined the court's invitation to comment on why the Morgans were not signing the waiver, stating, "[I]t's not before the court," to which the court agreed. Report of Proceedings (RP) (July 24, 2015) at 9-11.

The trial court ultimately denied Justus' motion to compel the production of State Farm's claim file. The court believed that given the case's procedural posture, it could not compel the Morgans to sign the waiver for State Farm to produce the file. Specifically, it stated:

9

> So, Mr. Johnson [Justus' attorney], the point is that's not before me right
> now. . . . There hasn't been a discovery request. And if you're trying to enforce
> the agreement that you have, that may take some other litigation, I think. I'm not
> going to force him to sign a waiver today, given the posture of the case.

RP (July 24, 2015) at 14.

The trial court then turned to State Farm's summary judgment motion and dismissed

Justus' extra contractual claims. The trial court entered orders reflecting these judgments.

Justus appeals.

## ANALYSIS

### I. DECLARATORY JUDGMENT COVERAGE ISSUES

We first examine Justus' arguments related to the insurance coverage issues in the

declaratory judgment action. Justus contends that (1) the settlement court's covenant judgment

settlement ruling collaterally estopped the trial court from reevaluating William's liability, and

that (2) the trial court erred in concluding that William's conduct did not support negligent

wrongful detention. For the reasons discussed below, we disagree with both arguments.

### 1.    Standard of Review

The ordinary rules of appellate review apply to an appeal from a declaratory judgment.

*Buck Mountain Owner's Ass'n v. Prestwich*, 174 Wn. App. 702, 713, 308 P.3d 644 (2013) (citing

RCW 7.24.070). When findings of fact and conclusions of law are entered following a bench

trial, we review whether the findings are supported by substantial evidence and, if so, whether

the findings support the trial court's conclusions of law and judgment. *Id*. Unchallenged

findings of facts are verities on appeal. *Cowiche*, 118 Wn.2d at 808. In addition, we review the

conclusions of law de novo to determine whether they are legally correct. *State v. Smith*, 196

Wn. App. 224, 230, 382 P.3d 721 (2016), *review granted*, 187 Wn.2d 1025 (2017).

10

2.       Collateral Estoppel

Justus argues that the settlement court's earlier ruling approving the reasonableness of the covenant judgment settlement collaterally estopped the trial court in this action from examining whether William's actions were negligent or intentional because the settlement court had already found that William was liable. Because the settlement court made clear it was not determining whether William's actions were negligent or intentional, we disagree that the trial court was collaterally estopped.

Collateral estoppel bars relitigation of the same issue in a subsequent action when that issue has been actually litigated as well as necessarily and finally determined in the earlier proceeding. *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 306-07, 96 P.3d 957 (2004). The purpose of this rule in the insurance context is to "avoid inconsistent judgments, delay, additional expense, and the creation of a perverse incentive for carriers to wait until liability and damages have been established before deciding whether it is cost-effective to intervene." *Green v. City of Wenatchee*, 148 Wn. App. 351, 362-63, 199 P.3d 1029 (2009). Whether an insurer is collaterally estopped from litigating liability in a subsequent coverage action turns on whether it had an actual opportunity to litigate the merits of liability. For example, in cases involving underinsured motorist insurance coverage, if an insurer is given notice and an opportunity to intervene in the underlying liability action but fails to do so, the insurer will be bound by the court's findings and conclusions. *Fisher v. Allstate Ins. Co.*, 136 Wn.2d 240, 246, 961 P.2d 350 (1998); *Finney v. Farmers Ins. Co.*, 21 Wn. App. 601, 617, 586 P.2d 519 (1978).

Further, if a court in a previous ruling substantially resolves an issue of liability, even if not to finality, the insurer is bound to those determinations in a subsequent coverage action. For

example, in *Mutual of Enumclaw Insurance Co. v. T&G Construction, Inc.*, 165 Wn.2d 255, 259, 199 P.3d 376 (2008), the plaintiff homeowners sued a developer, the insured, for improperly installing siding on their homes. The insurer represented the developer and moved for summary judgment, arguing that the statute of limitations precluded the homeowners' claims. *Id.* at 260. The trial court denied the insurer's motion for summary judgment. *Id.* Subsequently, at the hearing on the reasonableness of a proposed settlement, the trial court stated that a trier of fact was "likely" to find that the statute of limitations defense would not apply. *Enumclaw*, 165 Wn.2d at 261. In a later declaratory judgment action to determine coverage, the insurer argued again that the homeowners' liability theory was precluded by the statute of limitations. *Id.* at 261-62. On appeal, the court held that the insurer could not relitigate the statute of limitations defense because it had been substantially resolved in the underlying liability case. *Id.* at 259.

In contrast to *Enumclaw*, an insurer will not be bound to findings and conclusions concerning liability if the insurer attempted to challenge the liability findings, and the trial court failed to adjudicate the merits of the substantive claims. In *Green*, 148 Wn. App. at 358, the plaintiff and insured entered into a covenant judgment settlement in which the insured stipulated to findings and conclusions that established his liability and consented to a money judgment. *Id.* at 358-59. The insurer expressly opposed these stipulations to the extent they would bind it. *Id.* at 359. The trial court entered the findings, conclusions, and judgment, but allowed the insurer to intervene and conduct additional discovery in order to contest the reasonableness of the covenant judgment settlement. *Id.* at 359-60. At a subsequent reasonableness hearing, the trial court found that the insurer was bound by the court's earlier entry of the findings and conclusions establishing the insured's liability and that the only question was whether the dollar amount of the judgment was reasonable. *See id.* at 360.

On appeal, the court in *Green* held that the trial court abused its discretion because the insurer "clearly preserved its right to challenge the reasonableness of the settlement . . . without any binding effect" from the earlier stipulations. *Id.* at 364, 367. Additionally, the *Green* court noted that the trial court failed to address the merits of the releasing party's liability theories and the released party's defenses as required under *Chaussee*[6], resulting in the entry of "conclusory liability findings." *Id.* at 364, 368-69.

Here, the settlement court had denied the Morgans' summary judgment motion to dismiss Justus' wrongful detention action based on the statute of limitations. In addition, at the hearing on the reasonableness of the settlement, State Farm argued that William's actions were all intentional and amounted to a false arrest or false imprisonment, both intentional torts, and as such, would be time barred. RCW 4.16.100; *Heckart*, 42 Wn. App. at 38-39. The settlement court recognized that State Farm had brought a declaratory action in a different court and decided that it "will not make findings as to whether or not . . . the degree to which Defendant [William]'s actions on June 9th, 2010[] were intentional versus negligent." CP at 960. The settlement court also decided that Justus would not be "time barred for any negligence-based claim *that is later found* to have arisen out of the events of June the 9th, 2010." CP at 966 (emphasis added).

Under these circumstances, we hold that the trial court in the declaratory judgment action was not collaterally estopped by the settlement court's rulings. The settlement court specifically

---

[6] *Chaussee v. Maryland Cas. Co.*, 60 Wn. App. 504, 512, 803 P.2d 1339 (1991).

declined to determine if Justus' actions were intentional or negligent.[7] In essence, it was deferring that ruling for adjudication in the declaratory judgment action. Unlike *Enumclaw*, State Farm is not asking the coverage court to determine once again whether William's conduct was negligent or intentional; State Farm is merely asking for that determination to be made for the first time. More akin to *Green*, State Farm asked the settlement court to determine whether William's actions were intentional or negligent, but the settlement court declined to do so.

For these reasons, the trial court was not collaterally estopped from examining William's liability by evaluating whether his actions were intentional or negligent.

3.      The Intentional Nature of William's Actions

We next turn to Justus' claim that the trial court erred in concluding that William's conduct did not support negligent wrongful detention. We assume, without deciding, that it is possible to establish a wrongful detention claim in our state under a theory of negligence. However, the unchallenged findings show that William only committed intentional acts in carrying out his tortious conduct. The tort of wrongful detention based on intentional conduct, to the extent recognized in Washington, would be subject to a two year statute of limitations. *See* RCW 4.16.130. The torts of false arrest and false imprisonment are intentional torts also barred by the two year statute of limitations. RCW 4.16.100(1); *Heckart*, 42 Wn. App. at 38-39.

---

[7] Justus also claims that the settlement court determined that the wrongful detention action was not barred by the statute of limitations based on an earlier ruling concerning State Farm's motion to dismiss. However, that ruling does not appear to be in the record. Even if it were, the settlement court's later representation that it was not determining which actions were negligent or intentional superseded the earlier ruling.

Because Justus sued more than two years after this incident, he has no cognizable claim[8] that

could be covered under the Morgans' umbrella insurance policy.

The *Restatement (Second) of Torts* section 282 (1965) defines "negligence" as "conduct

which falls below the standard established by law for the protection of others against

unreasonable risk of harm. Section 284 of the *Restatement* defines "negligent conduct" in part as

"an act which the actor as a reasonable man should recognize as involving an unreasonable risk

of causing an invasion of an interest of another."

In defining "intent," section 8A of the *Restatement* states that

"Intent" . . . has reference to the consequences of an act rather than the act itself.
When an actor fires a gun in the midst of the Mojave Desert, he intends to pull the
trigger; but when the bullet hits a person who is present in the desert without the
actor's knowledge, he does not intend that result. "Intent" is limited, wherever it is
used, to the consequences of the act.

*All consequences which the actor desires to bring about are intended. . . .* Intent is
not, however, limited to consequences which are desired. *If the actor knows that
the consequences are certain, or substantially certain, to result from his act, and
still goes ahead, he is treated by the law as if he had in fact desired to produce the
result.* As the probability that the consequences will follow decreases, and becomes
less than substantial certainty, the actor's conduct loses the character of intent, and
becomes mere recklessness, as defined in § 500. *As the probability decreases
further, and amounts only to a risk that the result will follow, it becomes ordinary
negligence*, as defined in § 282 . . .

(Emphasis added.)

Under these definitions, then, we examine whether William's actions were best

characterized as intentional, meaning he desired to bring about the consequences of his volitional

---

[8] In the proceedings to determine the reasonableness of the settlement, Justus asserted claims
against William for negligently preventing Justus from rendering aid to Tobeck and negligently
using his gun against Justus. However, he does not assert these as separate claims in this appeal.
*See* Reply Br. of Appellant at 3 ("Justus agrees with State Farm that his main claim at trial was
that his damage settlement was covered . . .under the 'personal injury' offense for 'wrongful
detention of a person.'"). Thus, we do not examine the merits of these separate claims.

acts because he knew or was substantially certain the result would occur, or whether they were negligent, meaning his volitional actions merely caused an unreasonable risk of harm to Justus.[9]

The unchallenged findings of fact established that (1) Donna informed William that she heard some noises outside; (2) William, a skilled marksman, grabbed his pistol and went outside; (3) William found Justus and Tobeck with his metal pipes in their pickup truck; (4) William yelled at Donna to call the police; (5) William confronted Justus and Tobeck and pointed his pistol directly at Justus, informing Justus that they were stealing his pipes; (6) William became agitated and upset despite Justus trying to calm William down; (7) Justus and Tobeck took off in their truck, which resulted in William firing nine shots—the majority of which went through the cab of the truck; (8) one bullet hit Tobeck in the head; (9) the truck crashed into a tree; (10) Justus escaped from the truck; and (11) William yelled at Justus to lay down in the street and spread out his arms.

Justus argues that William's actions were negligent because he unreasonably assessed the situation by thinking that he could lawfully exercise force against Justus and detain him. William's request that Donna call 911 and his statement that he believed Tobeck and Justus were stealing his pipes perhaps support a negligence theory. However, William's act of pointing his gun at Justus began the transformation of any initial negligent assessment of the situation into intentional conduct in which he unlawfully tried to restrain Justus. William's pointing of the gun at Justus was intentional, not merely because he voluntarily pointed a gun at Justus, but also

---

[9] In his complaint, Justus alleged that the wrongful detention was a result of William's "reckless acts." CP at 678. In his reply brief, Justus acknowledges a recklessness liability theory, but does not provide any supporting argument on the issue, as required by RAP 10.3(a)(6). Accordingly, we do not examine any issues related to a recklessness theory.

because he desired the consequences of pointing the gun at Justus, which was to control and detain him.

William's immediate shooting at the truck after it took off and the numerous rounds he fired at the cab of the truck were unequivocally beyond mere negligence. At a minimum, William knew or was substantially certain that his conduct would restrain Justus by inflicting injury, which he in fact was able to accomplish. After William mortally wounded Tobeck, causing the truck to crash into the tree, he pointed his gun at Justus and detained him on the ground. The result that William desired to achieve, detainment and restraint of Justus and Tobeck through intimidation or infliction of injury, was successful. Whether characterized as wrongful detention, false arrest, or false imprisonment, these are intentional acts subject to a two year statute of limitations. RCW 4.16.100(1), .130; *Heckart*, 42 Wn. App. at 38-39.

We do not minimize the barbarous nature of William's actions, and we have some sense of the trauma that this incident has brought to Justus' life. Justus had clear claims against William for false arrest and false imprisonment, among other theories. However, because William knew or was substantially certain the result would occur, *Restatement (Second) of Torts* section 8A, these were intentional acts to harm and detain Justus. They were not merely conduct which created an "unreasonable risk of harm." RESTATEMENT (SECOND) OF TORTS § 282. Therefore, because Justus sued over two years after the incident, those causes of actions are barred by the statute of limitations. RCW 4.16.100(1), .130; *Heckart*, 42 Wn. App. at 38-39.

For these reasons, the trial court's unchallenged findings of fact support its conclusion that Justus failed to establish liability grounded in negligence for William's actions.

## II. MOTION TO COMPEL AND JUSTUS' EXTRA CONTRACTUAL CLAIMS

Justus argues that the trial court erred by denying him access to the Morgans' insurance claim file in State Farm's possession. Because that discovery was denied, Justus further contends the trial court's ruling dismissing his extra contractual claims on summary judgment was erroneous. We agree.

"We review a trial court's discovery orders for abuse of discretion." *Cedell v. Farmers Ins. Co. of Wash.*, 176 Wn.2d 686, 694, 295 P.3d 239 (2013). "We will reverse a trial court's discovery rulings 'only on a clear showing that the court's exercise of discretion was manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Id.* (quoting *T.S. v. Boy Scouts of Am.*, 157 Wn.2d 416, 423, 138 P.3d 1053 (2006)). "A trial court's authority to entertain a motion, as opposed to its authority to decide that motion, is a question of law that we review de novo." *Rudolph v. Empirical Research Sys., Inc.*, 107 Wn. App. 861, 866, 28 P.3d 813 (2001).

Washington courts have established that even if insurance coverage is denied, bad faith and CPA claims can still be viable against the insured.[10] *Coventry Assocs. v. Am. States Ins. Co.*, 136 Wn.2d 269, 279, 961 P.2d 933 (1998). This principle extends to not only first party insureds, but to those third parties who are assigned the first party insured's claims and sue on behalf of them. *See Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 399-400, 823 P.2d 499 (1992); *see Kagele v. Aetna Life & Cas. Co.*, 40 Wn. App. 194, 197-98, 698 P.2d 90 (1985) (collecting cases).

---

[10] We do not address whether an IFCA claim can be pursued even after coverage is denied, because State Farm does not argue on appeal that it cannot.

In *Cedell*, 176 Wn.2d at 696, the Supreme Court determined that the insured needs access to the insurance claim file in order to discover facts to support a bad faith claim. In balancing the purposes of discovery with the purpose of the attorney-client privilege, the *Cedell* court laid out the following rules governing a discovery request for an insurance claim file in the context of a first party bad faith claim against an insurer:

> We start from the presumption that there is no attorney-client privilege relevant between the insured and the insurer in the claims adjusting process, and that the attorney-client and work product privileges are generally not relevant. However, the insurer may overcome the presumption of discoverability by showing its attorney was not engaged in the quasi-fiduciary tasks of investigating and evaluating or processing the claim, but instead in providing the insurer with counsel as to its own potential liability; for example, whether or not coverage exists under the law. Upon such a showing, the insurance company is entitled to an in camera review of the claims file and to the redaction of communications from counsel that reflected the mental impressions of the attorney to the insurance company, unless those mental impressions are directly at issue in its quasi-fiduciary responsibilities to its insured. If the trial judge finds the attorney-client privilege applies, then the court should next address any claims the insured may have to pierce the attorney-client privilege.

*Id.* at 698-99 (citations omitted) (footnotes omitted).[11]

Justus moved to compel production of the claim file under *Cedell*. The situation at hand differs from *Cedell* in that State Farm is not arguing that its own attorney-client privilege is preventing Justus from receiving the claim file, but rather is asserting the Morgans' privilege. On this basis, the trial court determined that it could not consider Justus' motion to compel because the Morgans were not before it.

---

[11] *Cedell* relied on the prior holdings of *Barry v. USAA*, 98 Wn. App. 199, 989 P.2d 1172 (1999), which discussed the propriety of compelling a claim file for not only an insured's bad faith claim, but also CPA claims as well. Although no Washington case appears to have examined the propriety of compelling a claim file for an IFCA cause of action, we do not need to address that issue given our decision of these issues.

Given the circumstances presented to the trial court, we hold that it had authority to compel production of the claim file, subject to the formula outlined in *Cedell*. The covenant judgment settlement between Justus and the Morgans was admitted into the trial court's record. That settlement states, in pertinent part, that the Morgans "represent that they have done nothing and will in the future do nothing to impair or otherwise adversely affect the Assigned Claims," and "[t]he Parties to this Agreement agree to provide reasonable cooperation in all matters for all talks and endeavors necessary to carry out or realize the terms of this Agreement." CP at 855-56. At oral argument, State Farm conceded that the Morgans were never dismissed from this action. *See State Farm v. Justus*, Oral Argument Recording (December 6, 2016) at 32:34. The Morgans' attorney participated in State Farm's response to Justus' discovery motion in a declaration and at the hearing before the trial court.

State Farm refused to disclose the claim file because the Morgans refused to waive any privilege they may have in it. The trial court responded by implying that Justus needed to file a separate action against the Morgans in order to compel production of the claim file. In these circumstances, denying Justus, who stands in the shoes of the Morgans, the rights to the claim file he would have under *Cedell* is contrary to the central purposes of discovery highlighted in *Cedell*. Those purposes include the production of all relevant facts and the promotion of the efficient and early resolution of claims. *Cedell*, 176 Wn.2d at 698. Preventing Justus from obtaining the claim file to determine the merits of his extra contractual claims plainly contravenes these purposes.

For these reasons, we extend *Cedell* to requests for production of a claim file by a third party who has been assigned a first party insured's claims. *Cf. Safeco*, 118 Wn.2d at 399-400 (extending the same principles applicable to first party bad faith claim to a bad faith claim assigned to a third party). Accordingly, we find the trial court abused its discretion and reverse the denial of Justus' motion to compel.

Turning to the consequences of this error, we note that in *Demelash v. Ross Stores, Inc.*, 105 Wn. App. 508, 514, 20 P.3d 447 (2001), the court reversed the discovery orders and summary judgment on Demelash's CPA and title 49.60 RCW claims because the trial court erred in refusing to allow discovery of evidence about Ross Stores' conduct in other shoplifting incidents. Similarly, in the present appeal the claim file may contain information pertinent to Justus' extra contractual claims. Accordingly, we reverse the grant of summary judgment on the extra contractual claims.[12] Consistently with *Cedell*, we remand for the trial court (1) to hold an in camera hearing to determine whether the claim file contains any material protected under the Morgans' attorney-client privilege, (2) to redact any privileged material and disclose the claim file to Justus, and (3) to determine State Farm's summary judgment motion on the extra contractual claims after the disclosure.[13]

---

[12] We note that *Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 684, 389 P.3d 476 (2017) recently held that the IFCA does not create an independent cause of action for regulatory violations. On remand, the trial court should consider the effect of *Perez-Crisantos* on Justus' IFCA claims. We note, however, that *Perez-Crisantos* continues to recognize that insurers may be sued under insurance regulations through a CPA or bad faith action. *Id.* at 676.

[13] State Farm also separately argues that Justus "dropped the ball" by not requesting the discovery sooner. Br. of Respondent at 44. Specifically, State Farm contends that Justus took assignment of extra contractual claims in May 2014, did not request the claim file during the November 11, 2014 discovery conference, and filed his motion to compel on June 1, 2015, in essence waiting about a year and a half before making his motion to compel. *Id.*

III. ATTORNEY FEES

Justus argues that he is entitled to an award of attorney fees and costs, but does not cite to any law providing for an award. A party is required to cite authority to advise us of the appropriate grounds for an award of attorney fees. *See Just Dirt, Inc. v. Knight Excavating, Inc.*, 138 Wn. App. 409, 420, 157 P.3d 431 (2007) (citing RAP 18.1). Without being directed to legal authority, we decline to award attorney fees.

CONCLUSION

We agree with the trial court's conclusion that William's actions did not constitute negligence, and we affirm its ruling that the Morgans' umbrella liability policy did not cover those intentional acts because the statute of limitations had run. We reverse the trial court's rulings denying Justus' motion to compel production of the Morgans' claim file and granting summary judgment in favor of State Farm on the extra contractual claims. We remand for the trial court (1) to hold an in camera hearing to determine whether the claim file contains any material protected under the Morgans' attorney-client privilege, (2) to redact any privileged

---

We disagree with State Farm's characterization of Justus' actions. Before the bifurcation of the trial into coverage and extra contractual claims, State Farm moved on November 20, 2014 for summary judgment dismissing the extra contractual claims. In his response, Justus specifically argued that summary judgment was not appropriate because it was "pre[]mature as discovery has not been completed." CP at 1310. This response was filed on January 5, 2015. Not long after, on March 13, 2015, the court ordered bifurcation of the cases and stayed all discovery and motions related to the extra contractual portion of the case. The stay on these proceedings was not lifted until May 20, 2015. Justus then filed his motion to compel on June 1, 2015, just over a week later.

Thus, State Farm's assertion that Justus "dropped the ball" is incorrect. He attempted to compel production of the claim file before the extra contractual claims portion of the case was stayed. After the stay was lifted, he promptly moved to compel production again. Accordingly, this argument is without merit.

material and disclose the claim file to Justus, and (3) to determine State Farm's summary

judgment motion on the extra contractual claims after the disclosure.

_____ Bjorgen, C.J.

BJORGEN, C.J.

We concur:

_____
JOHANSON, J.

_____
MELNICK, J.