# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JOANNE STEIGMAN, a single woman, | No. 58008-0-II |
| Respondent, | |
| v. | |
| FRED HUTCHISON and JANE DOE HUTCHISON, husband and wife, | UNPUBLISHED OPINION |
| Appellants. | |

VELJACIC, A.C.J. — Fred Hutchison[1] had an agreement with Joanne Steigman to sell Steigman real property. The deal fell through right before closing, eventually resulting in trial before the Grays Harbor County Superior Court. Fred appeals the trial court's order and judgment ordering specific performance, that Fred sell the property to Steigman. He also appeals the trial court's findings of fact and conclusions of law supporting the order and judgment for specific performance. Fred argues that the court erred when ordering specific performance because it lacked authority to enter the order given that the jury issued a verdict in favor of specific performance. He also argues that he properly terminated the contract before closing because (1) Steigman failed to furnish proof of financing and (2) because his wife Susan was unwilling to sell the property for the agreed price.

We conclude that a jury trial decision in favor of specific performance did not preclude the trial court from entering findings and conclusions regarding specific performance, nor did it

---

[1] Due to Fred and his wife Cheryl Susan (Susan) having the same last name, we will refer to each by their first name. No disrespect is intended.

prevent the trial court from ordering specific performance as a remedy because the trial court has broad discretionary authority to fashion equitable remedies. We affirm. Finally, we deny Steigman's request for attorney fees incurred on appeal under RAP 18.9(a).

FACTS

I.      BACKGROUND

In June 2014, Steigman began renting property from Fred in Grays Harbor County. Steigman and Fred discussed Steigman purchasing the property outright or engaging in a lease-to-own arrangement. Steigman requested a written contract when first agreeing to move in but stated that Fred refused. Eventually, the two orally agreed to have Steigman purchase the property over the span of three years.

In January 2019, Steigman again requested a written contract from Fred, reflecting their agreement. This time he acquiesced, stating he needed to sell the property. After negotiating, Steigman and Fred agreed to a price of $93,000. In turn, Steigman began the process of obtaining financing.

On May 29, 2019, Steigman was pre-approved for financing via e-mail from Alyssa Beller at Academy Mortgage. The e-mail stated:

> You have been pre approved based on the information provided, for a total project cost of $244,422 + closing costs. That amount includes land acquisition, cost to build, site preparation and owner responsible items. Your preapproval is subject to the following items.
> . . . .
> Your next step will be to get with the seller of your property and write up a purchase and sale agreement for the lot[.]. . . Once loan disclosures are signed and the land contract is received, we can order the proposed construction appraisal!

Ex. 201. Steigman informed Fred that the items required for preapproval had been completed, provided verification of approval from the title company, and advised Fred that all that remained was for him to sign the for sale by owner contract (FSBO).

On June 12, Fred and Steigman signed the FSBO, a financing addendum, and the seller's

disclosure statement. Notably, the FSBO outlined the following:

> 2. PURCHASE PRICE. The purchase price for the Property is. . . . . . .$ 93,000
> which the BUYER agrees to pay as follows: $93,000.
>
> . . . .
>
> 4. FINANCING CONDITIONS. This Contract is conditioned upon BUYER
> obtaining financing within __ days (30 days if left blank) of the Effective Date as
> described below and in accordance with the terms of Standard Terms, Paragraph C.
> BUYER agrees to make loan application within __ days (5 days if left blank) of the
> Effective Date.

Ex. 7.

> A month later, Fred wrote Steigman a letter:
>
> My spouse, Cheryl [Susan] Hutchison, has become aware of your offer to
> purchase the property . . . and as such is not willing to sell at your current offer.
> While Washington is a community property state, and which *she is willing
> to sell, we believe the current value of $100,800,* according to the county assessor,
> of which we have paid the tax on that value (1,295.18) is more realistic + as such,
> *will consider an offer to purchase the property for the current value as set by the
> assessor's office*
>
> Fred & Cheryl [Susan] Hutchison

Ex. 28 (emphasis added). Steigman received the letter before closing. The July 30 closing date

came and went with no property transfer occurring between the parties.

II.      PROCEDURAL HISTORY

In September, Steigman filed suit for breach of contract and alleged violation of the

Washington Consumer Protection Act (CPA), seeking specific performance and damages. The

parties tried all claims before a jury. The trial court instructed the jury on all claims, and it rendered

a verdict in Steigman's favor. Specifically, the jury reached a verdict as follows: "For breach of

contract, we award damages to plaintiff [Steigman] in the sum of zero," it also found that Fred did

3

not violate the CPA, and "ask[ed] for the Court to order the sale of the property from [Fred] to [Steigman] for the contract sale price of $93,000." Rep. of Proc. (RP) (Sept. 8, 2022) at 209.[2]

On October 24, 2022, the trial court entered findings of fact and conclusions of law. The trial court found that Steigman timely obtained financing. The court ordered Fred, individually and as the surviving heir to Susan's estate,[3] to sell the property to Steigman for the contracted price. Fred Appeals.

ANALYSIS

I. GENERAL LEGAL PRINCIPLES

A. Claims Tried to Jury

This case arises from three claims, two breach of contract claims and a claim under the CPA. Washington case law is clear that a suit requesting damages arising from CPA claims entitles plaintiff to a jury trial. *Thorley v. Nowlin*, ___ Wn. App. ___, 542 P.3d 137, 153 (2024) (holding the appellants possessed a right to jury trial for their CPA claims because they were legal in nature). But, a breach of contract claim seeking an equitable remedy does not necessarily entitle the plaintiff to a jury trial on that claim. . *Jackowski v. Borchelt*, 151 Wn. App. 1, 19, 209 P.3d 514 (2009), *affirmed by Jackowski v. Borchelt*, 17 Wn.2d 720, 278 P.3d 1100 (2012).

B. Assignments of Error

RAP 10.3(g) requires appellants to make specific assignments of error to the trial court's findings of fact, with reference to the finding by number. We "will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining

---

[2] The verdict form is not in the clerk's papers, rather the verbatim report of proceedings reflects that the verdict was read aloud by the court bailiff.

[3] Susan passed away before the suit was filed.

thereto." RAP 10.3(g). "RAP 10.3 requires an appellant to present argument to the reviewing court as to why specific findings of fact are in error and to support those arguments with citation to relevant portions of the record." *In re Disciplinary Proceeding Against Burtch*, 162 Wn.2d 873, 895, 175 P.3d 1070 (2008). Where an appellant "fail[s] to pinpoint any argument as to why specific findings of fact are not supported by substantial evidence[,] . . . [we need not] unearth arguments from the record for the benefit of an appellant." *Id.* at 896. Unchallenged findings of fact are verities on appeal. *State Farm Fire & Cas. Co. v. Justus*, 199 Wn. App. 435, 448, 398 P.3d 1258 (2017).

C.     Breach of Contract

To prevail on a breach of contract claim, the plaintiff must show the existence of a contract imposing a duty, breach of the duty, causation, and damages. *Baldwin v. Silver*, 165 Wn. App. 463, 473, 269 P.3d 284 (2011).

When the trial court enters findings of fact and conclusions of law after a bench trial, we review whether the court's findings are supported by substantial evidence and, if so, whether the findings support the conclusions. *Justus*, 199 Wn. App. at 448. Unchallenged findings of fact are verities on appeal. *Id.* We also review the trial court's conclusions of law de novo to determine whether they are legally correct. *Id.*

II.     FRED'S ARGUMENTS

A.     Fred's Assignments of Error

Fred makes two assignments error. He assigns error to the trial court's issuance of an order for specific performance and a judgment for the plaintiff. He also assigns error to the trial court's issuance of findings of fact and conclusions of law, which we interpret to mean that Fred believes the trial court should not have entered findings and conclusions at all. At the same time, Fred does

not assign error to any specific finding of fact by the trial court, identifying none for us to review. This necessarily dispenses with several of his arguments, which are more specifically discussed below.

B.      Alleged Cancellation of Contract

Fred argues that he canceled the contract in a timely manner due to Steigman failing to furnish proof that she obtained financing after 30 days of the signing of the FSBO.

Fred does not assign error to the trial court's finding that Steigman timely obtained proof of financing. Accordingly, that Steigman timely obtained proof of financing is a verity before us. Fred's argument fails.

But even if Fred could challenge this fact, his assertion that he canceled the contract on this basis would nevertheless fall flat. Fred admitted that the letter he sent to Steigman on July 12, 2019 purportedly canceling the contract, did not address the issues of financing or late payments; it only noted that Susan did not agree to the price. This argument fails.

Fred also appears to argue that he canceled the contract because Susan did not agree to the purchase price. Again, he assigns no error to the trial court's findings that the contract was entered into on behalf of the marital community, which includes Susan. Inherent in the court's findings is that the contract was not canceled, necessarily leading to the conclusion that Steigman is due judgment on the contract. Fred's argument fails.

C.       Susan's Interest in the Property[4]

Next, Fred appears to argue that because Steigman had notice of Susan's interest in the property, Steigman knew Fred could not convey the property without Susan's consent.[5]   But whether Steigman knew of Susan's interest is immaterial to whether Fred conveyed the property on behalf of the marital community.

More to the point, the trial court found that "all acts alleged to have been done by Fred Hutchison were done for and on behalf of the marital community of Fred Hutchison and Jane Doe Hutchison (actually [ ] Susan Hutchison)."  CP at 26.  Fred does not assign error to this finding of fact, or any other findings of fact.  It is therefore a verity on appeal.  Fred's argument necessarily fails.

D.       Basis for the Court to Order Specific Performance.

Fred asserts that the trial court had no basis to order specific performance.  But he takes no issue with the general principle that the trial court has broad discretionary authority to fashion equitable remedies.  *SAC Downtown Ltd. P'ship v. Kahn*, 123 Wn.2d 197, 204, 867 P.2d 605 (1994).  Rather, Fred argues that "Steigman did not prove that there was a valid contract to sell the property."  Br. of Appellant at 13.  But again, Fred did not assign error to any of the court's findings, so they are verities on appeal.  We do not address this argument further.

---

[4] Fred raises several other arguments, including ambiguity in the FSBO, the FSBO being void ab initio, constructive notice of Kellye Webster's interest in the property, and the doctrine of impossibility.  However, these arguments were not raised below.  While appellate courts retain discretion to consider arguments not raised below, we exercise such discretion sparingly.  We decline to consider these arguments.  RAP 2.5(a).

[5] In his initial brief, Fred argued that his niece Kellye Webster also had a property interest at the time.  However, in his reply, Fred concedes Webster did not have an interest in the property because she conveyed her interest to Fred in 2012 via quit claim deed.  We accept his concession.

E.      Trial Court's Authority to Enter Findings, Conclusions, and Order

Fred appears to assert that the trial court lacked authority to enter findings of fact and conclusions of law. Fred argues that because all of the claims were tried to a jury, and the jury rendered verdicts on all issues, that this divested the trial court of authority to enter findings and conclusions. We disagree.

Fred cites to no direct authority for the proposition that causes of action lacking a commensurate right to a jury trial, which are nevertheless presented to a jury, to verdict, divest the trial court of authority to enter findings and conclusions on those causes of action. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

Fred does, however, cite to CR 49(b) for this same proposition (that the trial court had no basis to enter findings and conclusions). But CR 49(b), by its plain language, simply provides that "[t]he court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict." While CR 49(b) provides the procedure by which general verdicts and interrogatories are to be provided to the jury when the jury is the finder of fact, it does not divest the trial court of its authority to enter findings. Fred's argument fails.

Fred then asserts that the court did not comply with CR 52, requiring notice prior to the trial court's entry of *findings and conclusions*, and CR 54, requiring notice prior to the trial court's entry of the *order* for specific performance. He asserts, as a result of his lack of notice prior to entry, that both the findings and conclusions and order are void. While it is true that CR 52 and

CR 54 both require notice prior to entry of findings and conclusions and an order, respectively, the rules do not set out the remedy for failure to provide notice.

Significantly, Fred provides no authority for the proposition that an order issued after lack of notice, a procedural error, is void. *See Rabbage v. Lorella*, 5 Wn. App. 2d 289, 297-300, 426 P.3d 768 (2018) (failure to provide notice of entry is a procedural error). "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer*, 60 Wn.2d at 126. Accordingly, Fred's argument fails.

III.    ATTORNEY FEES ON APPEAL

Steigman argues that she is entitled to attorney fees under RAP 18.9(a) for having to respond to a frivolous appeal. Fred counters, arguing that the appeal is not frivolous because even if the judgment is affirmed, there were debatable issues proper for an appeal. We agree with Fred.

Under RAP 18.9(a), we may order a party who uses the rules for the purpose of delay, files a frivolous appeal, or fails to comply with the rules to pay terms to any party who has been harmed by the delay or the failure to comply. "An appeal is frivolous when the appeal presents no debatable issues on which reasonable minds could differ and is so lacking in merit that there is no possibility of reversal." *Stiles v. Kearney*, 168 Wn. App. 250, 267, 277 P.3d 9 (2012).

Here, Fred's arguments on appeal were not frivolous. Accordingly, we deny Steigman's request for attorney fees incurred on appeal under RAP 18.9(a).

58008-0-II

## CONCLUSION

We affirm the trial court's entry of findings and conclusions and its separate order and judgment granting specific performance. We deny Steigman's request for attorney fees incurred on appeal under RAP 18.9(a).

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

 

 

Veljacic, A.C.J.

We concur:

Maxa, J.

Che, J.